**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **JENNIFER DORSEY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Civil No.  2:07CV831-MEF** |
| | ) | **Crim. No.  2:05CR208-MEF** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

<u>**UNITED STATES RESPONSE TO DEFENDANT'S §2255 MOTION**</u>

COMES NOW the United States of America, by and through its attorney, Leura G. Canary, United States Attorney, and, in compliance with this Court's order, responds to Defendant/Movant Jennifer Dorsey's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, Or Correct Sentence, as follows:

## I.  PROCEDURAL HISTORY AND RELEVANT FACTS

On September 8, 2005, a grand jury for the Middle District of Alabama returned a three-count indictment against Jennifer Dorsey.  See Exhibit A, the indictment.  Count One of the indictment charged that on or about the 7th day of May, 2004, in Montgomery County, within the Middle District of Alabama and elsewhere, the defendant, JENNIFER DORSEY, did knowingly, intentionally, and unlawfully possess with the intent to distribute approximately 373.4 grams of a mixture and substance containing a detectable amount of amphetamine, a Schedule II controlled  substance, in violation of Title 21, United States Code, Section 841(a)(1).  Count Two charged that on or about the 7th day of May, 2004, in Montgomery County, within the Middle District of Alabama

1

and elsewhere, the defendant, JENNIFER DORSEY, did use and carry a firearm during and in relation to and did possess a firearm in furtherance of, a drug trafficking crime for which she may be prosecuted in a Court of the United States, to-wit: possession with the intent to distribute amphetamine as charged in Count 1 of this indictment, in violation of Title 18, United States Code, Section 924(c)(1)(A). Count Three charged that on or about the 7th day of May, 2004, in Montgomery County, within the Middle District of Alabama and elsewhere, the defendant, JENNIFER DORSEY, then being an unlawful user of a controlled substance as defined in 21 U.S.C. §802 did knowingly possess in and affecting commerce a firearm, to-wit: a Taurus .357 caliber revolver, bearing serial number OC41685, in violation of Title 18, United States Code, Section 922(g)(3). Exhibit A.

On May 25, 2006, Dorsey entered into a plea agreement with the United States. Exhibit B, a copy of the plea agreement. As part of the plea agreement, the government agreed to move to dismiss Count Two in the indictment. Exhibit B, at 3. The plea agreement, signed by Dorsey, stated, "Defendant further expressly waives the right to appeal the conviction and sentence on any other ground and waives the right to attack the sentence in any post-conviction proceeding. This waiver does not include the right to appeal on the grounds of ineffective assistance of counsel and prosecutorial misconduct." Exhibit B, at 5. The plea agreement concluded with a statement that Dorsey understood the plea agreement, that the plea agreement correctly stated the representations made to Dorsey, and that Dorsey was satisfied that she had received competent advice and representation from her counsel . Id. at 12.

The Court conducted Dorsey's plea hearing on May 25, 2005. Exhibit C,

transcript of plea hearing.    At the outset of the hearing, Dorsey was placed under oath.

Exhibit C at 4.  Dorsey then consented to have her plea taken by a United States

Magistrate Judge.  Id. at 2.  During the plea hearing, the Court asked Dorsey, "Are you

fully satisfied with the counsel, representation and advice given to you in this case by

your attorney, Mr. Lewis?"  Id. at 7.  Dorsey responded, "Yes, ma'am."  Id.  Moreover,

later in the plea hearing, the Court questioned Dorsey regarding the collateral attack

waiver, saying:

> Court:      And do you understand that by entering into this plea agreement
>             and entering a plea of guilty, you will have waived, or given up, your
>             right to appeal all—sorry—or to collaterally attack all or part of this
>             sentence?
>
> Dorsey:     Yes, ma'am.

Id. at 10.

The United States Probation Office prepared a presentence investigation report

(PSI).    The PSI stated that on May 7, 2004, agents executed a search warrant at

Dorsey's residence. PSI ¶ 9. During the execution of the search warrant, agents seized

approximately 410 grams of suspected methamphetamine from Dorsey's bedroom.  PSI

¶ 9.  Subsequent laboratory tests revealed the substance thought to be

methamphetamine, actually was amphetamine.  Agents also found a Taurus .357

caliber revolver in the night stand beside Dorsey's bed in her bedroom.  Id.  The report

further attributed two points to Dorsey's base offense level pursuant to U.S.S.G. §

2D1.1(b)(1).  PSI at ¶ 17.  Dorsey objected to the inclusion of the two point

enhancement for possession of the firearm.  See Exhibit D, sentencing hearing

transcript at 6.

Dorsey's sentencing hearing was held on September 11, 2006.  Exhibit D.

Dorsey testified at the sentencing hearing on the issue of the two-point enhancement for

possession of the firearm.  During her testimony, she admitted that the revolver was in

her night stand; that 300 grams of amphetamine was located beside her bed in a shoe

box; that scales and marijuana were also located in her bedroom.  Exhibit D, at 9-11.

The court denied her objection finding that "the two-point enhancement for possession

of a firearm in connection with a drug trafficking offense should be and is applied under

section 2D1.1(b)(1) of the United States Sentencing Guidelines."  Exhibit D, at 21.

The Court found that Dorsey's final offense level was 31, which, when combined

with a criminal history category of I, resulted in a guideline imprisonment range of 108

months to 135 months.  Id. at 22.   The government filed a motion for downward

departure pursuant to U.S.S.G. § 5K1.1.  Id. at 22.  The court granted such motion and

reduced Dorsey's offense level to a level 27, which combined with a criminal history

category of I, resulted in a guideline range of 70 months to 87 months imprisonment.  Id.

at 26.  After hearing from several character witnesses, the court sentenced Dorsey to

term of imprisonment of 70 months.  Id. at 38.  Judgment was entered in Dorsey's case

on September 13, 2006.

Dorsey filed this Motion to Vacate, Set Aside or Correct Sentence on September

14, 2007.  On October 16, 2007, this Court entered an order directing the United States

to respond to Dorsey's claims.  Doc. 7.  The Government's response deadline was

continued to no later than January 3,  2008.  The United States now files this response

to the § 2255 motion.

4

## II.  CLAIM RAISED IN THE § 2255 MOTION

Dorsey raises two claims in her § 2255 motion, to wit:

1)      That the Court misapplied the two-point enhancement due to the presence

of firearms, pursuant to U.S.S.G. § 2D1.1(b).

2)      That Dorsey's counsel was ineffective because he failed to explain that, by

pleading guilty, Dorsey was giving up her right to appeal.


## III.  RESPONSE TO CLAIMS FOR RELIEF

### A.      Dorsey Has Met The One-Year Statute Of Limitations Deadline For The Filing of Claims Under 28 U.S.C. § 2255.

The United States notes at the outset that Dorsey has filed her motion in a timely

manner under paragraph six of 28 U.S.C. § 2255, which provides a one-year period of

time within which to file a motion under the rule.  The applicable provision requires that

a movant file her § 2255 motion within one year from "the date on which the judgment of

conviction became final." 28 U.S.C. § 2255(1).

The judgment against Dorsey was entered on September 11, 2006.  She did not

appeal her conviction or sentence to the Eleventh Circuit Court of Appeals.  Thus, her

sentence became final when the time for filing an appeal to the Eleventh Circuit expired.

Although not specifically addressing the application of the statute of limitations to the

10-day notice of appeal requirement, the Eleventh Circuit has held that a judgment of

conviction becomes final for someone who appeals to an appellate court when the time

for seeking certiorari review in the Supreme Court expires.  See Kaufman v. United

States, 282 F.3d 1336, 1337-39 (11th Cir.2002). Likewise, a judgment of conviction

becomes final for someone who does not appeal when the time for seeking that appeal

expires.  Dorsey had ten days from the September 11, 2006 entry of judgment by this

Court to seek review by the Eleventh Circuit; her judgment of sentence, therefore,

became final on September 21, 2006.  Therefore, under § 2255, Dorsey had until

September 21, 2007 to file her motion.  Her filing of this § 2255 motion on September

14, 2007 is within one year, and her motion is therefore timely.

**B.    Dorsey's Petition Is Barred Because She Waived Her Right to Seek Relief Under 28 U.S.C. § 2255 When She Entered Her Guilty Plea.**

The Eleventh Circuit views Dorsey's waiver of her right to seek relief under §

2255 as a contract between the United States and a criminal defendant.  The Court has

stated that among the considerations that a defendant may offer as part of such a

contract is waiver of her right to appeal, provided that the waiver is made knowingly and

voluntarily. See United States v. Bushert, 997 F.2d 1343, 1350 (11th Cir.1993).  In this

case, [the appellant's] waiver was clearly knowing and voluntary.  The magistrate judge

specifically questioned Dorsey regarding her waiver of her right to appeal. See United

States v. Buchanan, 131 F.3d 1005, 1008 (11th Cir.1997).  The plea agreement is

therefore enforceable and would appear to bar this appeal.  United States v. Howle, 166

F.3d 1166, 1168 (11th Cir. 1999).

The Eleventh Circuit has also stated that "a waiver of the right to seek federal

habeas review must be 'an intentional relinquishment or abandonment of a known right,'

the right to federal habeas review."  Allen v. Thomas,161 F.3d 667, 670 (11th Cir.

1998).  The record demonstrates that the Court ascertained that Dorsey's assent to the

terms of her plea agreement was knowing and voluntary. Exhibit C at 14.  Dorsey's §

6

2255 motion is thus procedurally barred from review by this Court.


**C.    Dorsey's Claims Are Procedurally Defaulted And Not Properly Considered In This § 2255 Proceeding Because They Could Have Been Raised On Direct Appeal, But Were Not, And Dorsey Has Failed To Demonstrate Cause And Prejudice To Overcome These Defaults.**


Dorsey's assertion that she should not have received the two-point enhancement for possessing a firearm is barred from this Court's review because it could have been, but was not, raised on direct appeal.  Because Dorsey did not raise this claim on direct appeal, it is barred in this collateral proceeding, unless she can show cause and prejudice to overcome the procedural bar.  A motion under § 2255 cannot be used as a substitute for appeal, Burke v. United States, 152 F.3d 1329, 1331 (11th Cir. 1998), and claims not raised on direct appeal that could have been are generally barred from review in § 2255 proceedings, McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir. 2001).  In Mills v. United States, 36 F.3d 1052 (11th Cir. 1994), the Eleventh Circuit succinctly summarized the law concerning procedural default as follows:

> Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a [Section] 2255 proceeding....  A ground of error is usually "available" on direct appeal when its merits can be reviewed without further factual development....  When a defendant fails to pursue an available claim on direct appeal, it will not be considered in a motion for [Section] 2255 relief unless he can establish  cause for the default and actual prejudice resulting from the alleged error....  Alternatively, under the fundamental miscarriage of justice exception, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default....

Id. at 1055-56 (internal citations omitted).  See also McCoy v. United States, 266 F.3d at 1258 ("A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and prejudice for his failure to assert his claims on direct appeal."). The burden of demonstrating cause and prejudice or a miscarriage of justice is on the movant.  See, e.g., Bousley v. United States, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,'... or that he is 'actually innocent[.]' ").

Dorsey has offered nothing to this Court to support a cause and prejudice or miscarriage of justice argument to overcome her procedural defaults.   Therefore, her claim should be dismissed on procedural grounds.

**D.      Dorsey's Legal Claim Is Without Merit.**

In the event this Court does not apply the procedural bar due to Dorsey's waiver of her right to file a § 2255 motion, or her failure to raise her claim on direct appeal, the United States addresses her claim of legal error in her sentence.  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations." Stephens v. United States, 14 F.Supp.2d 1322, 1334 (N.D. Ga. 1998), quoting United States v. Guerra, 588 F.2d 519, 520-21 (5th Cir.1979).  "[I]n this circuit, as well as in the Supreme Court, when a § 2255 petitioner sets out detailed factual allegations ... the petitioner is entitled to a hearing unless the motion and the files on record conclusively show the petitioner is entitled to no relief....  Typically, this circuit has found some form of corroboration to a petitioner's allegations before requiring a

8

hearing." Potts v. Zant, 638 F.2d 727, 751 (5th Cir. 1981)(citations omitted).[1] Because Dorsey's motion and the record offer no factual basis or proof – and certainly no corroboration of her claim – necessary to establish her claims, it should be dismissed.

**E.     The Court Correctly Imposed a Two-Point Enhancement for Possession of a Firearm.**

Dorsey claims that the two-point enhancement based on possession of a firearm should be removed because she had a license for the firearm and the firearm was for protection.  See Dorsey's Memorandum of Law in Support of Habeas Corpus Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C.A. §2255, at 5.  An adjustment under U.S.S.G. § 2D1.1(b)(1) should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.  United States v. Hansley, 54 F.3d 7009 (11th Cir. 1995).  Under this provision, the government need only prove that the firearm was present during the drug trafficking offense. United States v. Audain, 254 F.3d 1286, 1289-90 (11th Cir.2001). Once the government does so, the burden shifts to the defendant to establish that a connection between the weapon and the offense was clearly improbable. Id. at 1289.

On May 7, 2004, agents executed a search warrant at the Dorsey's residence. PSI ¶ 9.  During the search, agents found amphetamine, scales, marijuana and a firearm in Dorsey's bedroom.  Agents found the amphetamines beside Dorsey's bed and the firearm in the bedside table. Indeed, Dorsey admitted gun was in her night stand and the amphetamines were located in a shoe box beside the same bed.  Exhibit

---

[1]  In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit rendered prior to the close of business on September 30, 1981.

D at 9-10.  Dorsey further admitted that she was selling the controlled substances out of her house.  Exhibit D at 11.  Because the gun was present during the drug trafficking offense of possession with the intent to distribute, the burden shifts to Dorsey to establish that a connection between the weapon and the offense was clearly improbable.  Dorsey has put forth no evidence that the weapon and the offense are not connected.  She only asserts that she had the licensed gun for protection.  There is no question that drug dealing is a dangerous business.  Many drug dealers have firearms for protection.  This Circuit has recognized that "weapons have become tools of the trade for those involved in the distribution of illicit drugs." United States v. Alvarez, 755 F.2d 830, 849 (11th Cir.1985).  However, Dorsey's assertion that she had the firearm for protection does not establish that the connection between the firearm and the drug trafficking offense was clearly improbable.  It simply establishes that as a drug trafficker, she needed to protect her drugs, her drug proceeds and possibly herself from other drug traffickers.

**F.      Dorsey's Counsel was not Ineffective for Failing to Explain that, by Pleading Guilty, Dorsey Forfeited Her Right to Appeal.**

Dorsey claims that her attorney was ineffective because he failed to "explain the 'pros' and 'cons' to a plea and the statutory 'maximum' and 'minimum' sentence for my agreeing to plea."  See Dorsey's Memorandum of Law in Support of Habeas Corpus Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C.A. §2255, at  4.  Dorsey further asserts that her attorney was ineffective because he "never fully explained to me the full scope of my taking the plea and what I was giving up by taking a plea." Id.

10

To succeed on a claim of ineffective assistance of counsel, a defendant must prove both that his counsel's performance was deficient and that the deficient performance prejudiced his case.  Strickland v. Washington, 466 U.S. 668, 694 (1984); see also, Bell v. Cone, 535 U.S. 685, 697-98 (2002) (reaffirming the Strickland v. Washington standard for reviewing ineffective assistance of counsel claims); Caderno v. United States, 256 F.3d 1213, 1217 (11th Cir. 2001) (applying two-part test of Strickland v. Washington).  More specifically, Movant must show that (1) identified acts or omissions of counsel fell below an objective standard of reasonableness, and (2) that his counsel's alleged errors or omissions resulted in prejudice to him to such an extent that, without counsel's alleged errors or omissions, there is a reasonable probability that the outcome of his trial would have been different.  Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990).

The Eleventh Circuit has described a defendant's burden in demonstrating that his counsel's deficient performance prejudiced his case as "high," noting that it is not enough to show that any errors had some conceivable effect on the outcome of the proceeding.  Robinson v. Moore, 300 F.3d 1320, 1343-44 (11th Cir. 2002).  To succeed on the ineffective assistance of counsel claim, the defendant must show that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different.

As the Eleventh Circuit has noted, "[i]t is well established that a habeas petitioner must demonstrate both deficient performance and prejudice, and that a failure to demonstrate either prong constitutes a failure to demonstrate ineffective assistance of counsel."  Bottoson v. Moore, 234 F.3d 526, 532 (11th Cir. 2000); accord, Robinson v.

11

<u>Moore</u>, 300 F.3d at 1343.  As demonstrated below, Dorsey has failed to plead facts sufficient to demonstrate that she was prejudiced by any of counsel's actions.  For that reason, her § 2255 motion should be summarily dismissed.

According to Dorsey's counsel's affidavit, Dorsey's counsel met with her on  two separate occasions to discuss the provisions of the plea agreement.  Exhibit E, at 2. Dorsey told her counsel that she understood the terms of the plea agreement.  <u>Id</u>. Moreover, "Dorsey verbally acknowledged her understanding that she could appeal if her counsel had been ineffective or if the prosecution had engaged in misconduct; otherwise, she could not appeal or challenge her sentence in a post-conviction proceeding."  <u>Id</u>.  Clearly, Dorsey understood her waiver of appeal and admitted to her attorney that she understood.

Further, assuming, *arguendo*, that Dorsey's counsel never reviewed with Dorsey the "pros and cons" to entering a plea of guilty, the court carefully explained the implications of her pleading guilty at her plea hearing.  The court explained her maximum penalties as well as the rights she relinquished by pleading guilty.  The court further reviewed Dorsey's waiver of appeal and collateral attack.  Because the court reviewed all essential issues in the plea hearing, even if Dorsey's counsel never explained the rights Dorsey relinquished or the waiver of appeal or collateral attack, Dorsey was not prejudiced by such.  Thus, no relief is warranted.

## V.  CONCLUSION

For the above reasons, Defendant/Movant Jennifer Dorsey has failed to

demonstrate that she is entitled to any immediate relief from this Court and her § 2255

motion should be denied without an evidentiary hearing.

Respectfully submitted this 3rd day of January, 2008.

/s/ Clark Morris
CLARK MORRIS
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280
(334) 223-7135 fax
clark.morris@usdoj.gov

**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **JENNIFER DORSEY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Civil No.  2:07CV831-MEF** |
| | ) | **Crim. No.  2:05CR208-MEF** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 3, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant: Jennifer Dorsey, Prisoner No. 11759-002, Marianna Federal Prison Camp, 3625 FCI Road, Marianna, Florida 32446.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Clark Morris
CLARK MORRIS
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280
(334) 223-7135 fax
clark.morris@usdoj.gov

# Exhibit A

FILED

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

SEP – 8 2005

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| UNITED STATES OF AMERICA | ) | CR. NO. $\mathcal{2} \cdot \mathcal{05} CR \mathcal{208} - F$ |
|---|---|---|
| v. | ) | [21 U.S.C. § 841(a)(1), 18 USC 922(g)(3) and 924(c)] |
| JENNIFER DORSEY | ) | **INDICTMENT** |

The Grand Jury charges:

### COUNT 1

That on or about the 7th day of May, 2004, in Montgomery County, within the

Middle District of Alabama and elsewhere, the defendant,

### JENNIFER DORSEY,

did knowingly, intentionally, and unlawfully possess with the intent to distribute

approximately 373.4 grams of a mixture and substance containing a detectable amount

of amphetamine, a Schedule II controlled  substance, in violation of Title 21, United

States Code, Section 841(a)(1).

### COUNT 2

That on or about the 7th day of May, 2004, in Montgomery County, within the

Middle District of Alabama and elsewhere, the defendant,

### JENNIFER DORSEY,

did use and carry a firearm during and in relation to and did possess a firearm in

furtherance of, a drug trafficking crime for which she may be prosecuted in a Court of

the United States, to-wit: possession with the intent to distribute amphetamine as

charged in Count 1 of this indictment, in violation of Title 18, United States Code, Section 924(c)(1)(A).

COUNT 3

That on or about the 7th day of May, 2004, in Montgomery County, within the Middle District of Alabama and elsewhere, the defendant,

JENNIFER DORSEY,

then being an unlawful user of a controlled substance as defined in 21 U.S.C. §802 did knowingly possess in and affecting commerce a firearm, to-wit: a Taurus .357 caliber revolver, bearing serial number OC41685, in violation of Title 18, United States Code, Section 922(g)(3).

FORFEITURE ALLEGATION

A.    Counts 1 through 3 of this indictment are hereby repeated and incorporated herein by reference.

B.    Upon conviction for the violation of Title 18, United States Code, Section 924(c)(1)(A), as alleged in Count 2 of this indictment and Title 18, United States Code, Section 922(g)(3), as alleged in Count 3 of this indictment the Defendant,

JENNIFER DORSEY,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924 and Title 28, United States Code, Section 2461(c), all firearms involved in the commission of this offense, including but not limited to the following:

One Taurus .357 Caliber Revolver, Serial Number OC41685.

C.    If any of the property described in this forfeiture allegation, as a result of any act an omission of the defendant:

(1)    cannot be located upon the exercise of due diligence;

(2)    has been transferred, sold to, or deposited with a third person;

(3)    has been placed beyond the jurisdiction of the court;

(4)    has been substantially diminished in value; or,

(5)    has been commingled with other property which cannot be divided without difficulty, the United States, pursuant to Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c), intends to seek an Order of this Court forfeiting any other property of said defendant up to the value of the property described above.

All in violation of Title 18, United States Code, Section 924(c)(1)(A) and Title 18, United States Code, Section 922(g)(3).

A TRUE BILL

FOREPERSON

LEURA GARRETT CANARY
United States Attorney

JOHN T. HARMON
Assistant United States Attorney

A. CLARK MORRIS
Assistant United States Attorney

Exhibit B

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA     )
                                    )
                                    )       2:05-cr-208-MEF-SRW
          v.                      )
                                    )
JENNIFER DORSEY               )

## PLEA AGREEMENT

DEFENSE COUNSEL:            Jay Lewis

ASSISTANT U.S. ATTORNEY:       A. Clark Morris

### COUNT AND STATUTES CHARGED:

Count 1:      21 U.S.C. § 841(a)(1)

Possession with Intent to Distribute a Controlled Substance (Amphetamine)

Count 3:      18 U.S.C. § 922(g)(3)

Possession of a Firearm while being an Unlawful User or Addicted to a Controlled Substance

### PENALTIES BY COUNT - MAXIMUM PENALTY:

Count 1:      21 U.S.C. § 841(a)(1)

     Possession with Intent to Distribute a Controlled Substance (Amphetamine)

     A term of imprisonment of not more than 20 years, a fine of not more than $1,000,000 or both and a supervised release period of not less than three (3) years.

Count 3:      18 U.S.C. § 922(g)(3)

     Possession of a Firearm while being an Unlawful User or Addicted to a Controlled Substance

     A term of imprisonment of not more than 10 years, a fine of not more than $250,000 or both and a supervised release period of not less than three (3) years.

## ELEMENTS OF THE OFFENSE

<u>21 U.S.C. § 841(a)(1):</u>

1.    The defendant knowingly possessed a controlled substance; and

2.    The defendant had the intent to distributed or transferred possession of said controlled substance.

<u>18 U.S.C. § 922(g)(3)</u>

1.    The defendant knowingly possessed a firearm or ammunition in or affecting interstate commerce, as charged; and

2.    The defendant was an unlawful user or addicted to a controlled substance

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

A. Clark Morris, Assistant United States Attorney, and Jay Lewis, attorney for the defendant, pursuant to Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, as amended, have, with the authorization of the undersigned defendant, heretofore entered into discussions with a view towards reaching a pretrial conclusion of the charges pending in the Indictment herein and a Plea Agreement has been reached by said parties.

### GOVERNMENT'S PROVISIONS

1. Upon entering a plea of guilty by the defendant to the offenses charged in the Indictment, the attorney for the Government will do the following:

a.  The Government will agree that a 2-level reduction in the applicable offense level pursuant to U.S.S.G. § 3E1.1(a) for the defendant's acceptance of responsibility is appropriate, so long as the defendant does not obstruct justice or otherwise fail to accept responsibility for the offense conduct.  Should the Government find the defendant assisted authorities in the investigation or prosecution of his own misconduct

2

by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and this Court to allocate their resources efficiently, the Government will move at sentencing for a further reduction of one-level, pursuant to U.S.S.G. § 3E1.1(b). Determination of whether the defendant met the defendant's obligations to qualify for the reduction pursuant to U.S.S.G. § 3E1.1 is at the sole discretion of the United States.

b. Agree that the amount of amphetamine attributable to the defendant is approximately 373 grams.

c. Agree to dismiss Count Two of the Indictment.

d. Should the defendant complete the defendant's obligations contained within the Cooperation Agreement as set forth herein, the Government will move at sentencing for a downward departure pursuant to U.S.S.G. § 5K1.1 and Title 18, United States Code, Section 3553(e) to reflect the defendant's substantial assistance. In that motion, the Government will recommend a downward departure of at least four (4) levels. Determination of whether the defendant has met the defendant's obligations to qualify for the reduction pursuant to U.S.S.G. § 5K1.1 and Title 18, United States Code, Section 3553(e) is at the sole discretion of the United States. After sentencing, should Defendant provide further cooperation not contemplated by this agreement the Government may file for a further reduction pursuant to Fed. R. Crim. P. 35. Determination of whether to file for a downward departure pursuant to Rule 35, and if a departure is filed, the level of that departure, is at the complete discretion of the Government.

2. The United States reserves the right to inform the Court and the Probation Office of all facts pertinent to the sentencing process, including all relevant information concerning

3

the offenses and the defendant's background.

## **DEFENDANT'S PROVISIONS**

1. The defendant agrees to the following:

    a. To plead guilty to the Indictment.

    b. Not to commit any other federal or state criminal offense while awaiting

sentencing.

## **FACTUAL BASIS**

1. The defendant admits the allegations charged in the Indictment and understands that the nature of the charge to which the plea is offered involves proof as to the charges in the indictment. Specifically, the defendant admits the following:

That on or about the 7th day of May, 2004, in Montgomery County, within the Middle District of Alabama and elsewhere, the defendant, JENNIFER DORSEY, did knowingly, intentionally, and unlawfully possess with the intent to distribute approximately 373.4 grams of a mixture and substance containing a detectable amount of amphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

That on or about the 7th day of May, 2004, in Montgomery County, within the Middle District of Alabama and elsewhere, the defendant, JENNIFER DORSEY, then being an unlawful user of a controlled substance as defined in 21 U.S.C. §802 did knowingly possess in and affecting commerce a firearm, to-wit: a Taurus .357 caliber revolver, bearing serial number OC41685, in violation of Title 18, United States Code, Section 922(g)(3).

4

## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

1. Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of the sentence under certain circumstances, the defendant expressly waives any and all rights conferred by 18 U.S.C. § 3742 to appeal the sentence. Defendant further expressly waives the right to appeal the conviction and sentence on any other ground and waives the right to attack the sentence in any post-conviction proceeding. This waiver does not include the right to appeal on the grounds of ineffective assistance of counsel and prosecutorial misconduct.

In return for the above waiver by the defendant, the Government does not waive its right to appeal the sentence imposed in the instant case. The Government does not waive its right to appeal any order dismissing the Indictment, vacating a sentence, or otherwise terminating the prosecution at any stage of the proceedings. Further, the parties agree that nothing in this agreement shall affect the Government's right and/or duty to appeal as set forth in 18 U.S.C. § 3742(b). However, if the United States appeals the defendant's sentence pursuant to 18 U.S.C. § 3742(b), the defendant is released from this waiver as to any issue the defendant may raise pursuant to 18 U.S.C. § 3742(a).

## COOPERATION AGREEMENT

1. The defendant agrees to cooperate fully and testify truthfully against any and all persons as to whom the defendant may have knowledge at the grand jury, trial, or whenever called upon to do so. The defendant understands that this agreement requires the defendant to be truthful and to testify truthfully whenever called upon. The defendant agrees to be available for the review of documents and other materials and for interviews

5

by law enforcement officers and attorneys for the Government upon reasonable request and to fully and truthfully respond to all questions asked of the defendant by law enforcement officers and attorneys for the Government.

The defendant agrees to fully and truthfully disclose to the Government everything the defendant knows about any and all documents and materials in the defendant's possession that relate to the violations charged in this Indictment and any other criminal violations in the Middle District of Alabama and elsewhere. The defendant agrees, if desired by the Government, to travel with agents outside the Middle District of Alabama to identify others involved in with the Defendant, locations and/or residences of others involved, or any other information related to others involved in this narcotics trafficking activity. The defendant agrees to submit to a polygraph examination conducted by the Government if requested to do so.

Provided that the defendant satisfies the terms of this Plea Agreement, any information that the defendant truthfully discloses to the Government during the course of the defendant's cooperation, concerning related offenses, will not be used against the defendant, directly or indirectly. The defendant understands that this agreement does not bar the defendant's prosecution for capital felonies, perjury, false statements, and/or obstruction of justice.

If the defendant has failed or should fail in any way to fulfill completely the defendant's obligations under this agreement, then the Government will be released from its commitment to honor all of its obligations to the defendant, without the defendant being allowed to withdraw the guilty plea. Thus, if at any time the defendant should knowingly and willfully withhold evidence from, or is found to have provided false information to, the Government investigators

6

or attorneys prior to or during the defendant's testimony before grand juries or in trials, or fails to return to the Middle District of Alabama for any scheduled court appearance or any scheduled meeting with law enforcement agents in the Middle District of Alabama, then the Government will be free: (1) to prosecute the defendant for perjury, false declaration, false statement, and/or obstruction of justice (18 U.S.C. §§ 1621, 1623, 1001, 1503); (2) to prosecute the defendant for all violations of federal criminal law which the defendant has committed; (3) to use against the defendant in all of those prosecutions and sentencings the information and documents that the defendant has disclosed or furnished to the Government during the course of the defendant's cooperation; (4) to recommend a maximum sentence; and, (5) to seek forfeiture of any and all forfeitable properties of the defendant. The question of whether Defendant has breached this agreement shall be at the sole discretion of the Government.

## DEFENDANT'S UNDERSTANDING AND ACKNOWLEDGMENT

1. The defendant, before entering a plea of guilty to the indictment, as provided for herein by said Plea Agreement, advises the Court that:

a. The discussions between the attorney for the Government and the attorney for the defendant towards reaching an agreed plea in this case have taken place with the defendant's authorization and consent.

b. The defendant further understands that, pursuant to 18 U.S.C. § 3013, said $200.00 assessment fee is to be paid by the defendant on the date of sentencing and that, if a fine is imposed by the Court at sentencing, the defendant shall meet with a member of the Financial Litigation Section of the United States Attorney's Office on the day of sentencing and complete a written personal financial statement setting forth the defendant's assets and liabilities as of the date of the offense. The defendant will make an honest, good faith effort to

7

pay said fine as directed by the Financial Litigation Section of the United States Attorney's Office. The defendant further understands that by completing the financial statement, the defendant is representing that it is true and accurate to the best of the defendant's information, knowledge, and belief.

c. The defendant understands that the defendant has a right to be represented by an attorney at every stage of the proceedings against the defendant herein and is represented by the defendant's undersigned attorney.

d. The defendant understands that the defendant has the right to plead not guilty and has the right to be tried by a jury and, at a trial thereof, has the right to the assistance of counsel, the right to confront and cross-examine witnesses against the defendant, the right to call witnesses in the defendant's own behalf, and the right not to be compelled to incriminate the defendant, and that if the defendant enters a plea of guilty herein, there will not be a further trial of any kind and that by the entry of such a plea, the defendant waives the right to a trial by jury or to a trial before the Court.

e. The defendant further understands that in entering a plea of guilty herein, the Court may ask questions about the offense to which the plea is entered and further understands that if the defendant answers these questions under oath, on the record, and in the presence of counsel, which questions and answers would be recorded, that the answers may later be used against the defendant in a prosecution for perjury or false statement if the answers are not truthful.

f. The Defendant further understands and advises the Court that the Plea Agreement as set forth herein and the plea to be entered by the defendant as a result thereof is voluntary on the defendant's part and is not the result of any force or threats or of any

8

promises apart from the aforesaid Plea Agreement. The defendant further advises the Court that the Plea Agreement set forth herein is the result of prior discussions between the attorney for the Government and the attorney for the defendant, all conducted with the defendant's authorization, knowledge, and consent.

g. The defendant further advises the Court that the defendant's understanding of this Plea Agreement is as set forth in this document.

h. The defendant further understands that the Government can only make a recommendation, which is not binding upon the Court. However, if the Court does not accept the plea agreement, the defendant may withdraw his guilty plea, if he so chooses.

i. The defendant further advises the Court that the defendant understands and has been advised that evidence of a plea of guilty, later withdrawn or an offer to plead guilty to the crime charged in the Indictment herein, or of statements made in connection with and relevant to said plea or offer to plead, shall not be admissible in any civil or criminal proceedings against the defendant. However, the defendant does understand that evidence of a statement made in connection with and relevant to a plea of guilty, later withdrawn, or an offer to plead guilty to the crimes charged in the Indictment herein, is admissible in a criminal proceeding for perjury or false statement when the statement was made by the defendant under oath, on the court record, and in the presence of counsel.

j. The defendant further understands that if the defendant has failed or should fail in any way to fulfill completely the defendant's obligations under this agreement, including, but not limited to, committing any new state or federal criminal offense while awaiting sentencing, then the Government will be released from its commitment to honor all of its obligations to the defendant without the defendant being able to withdraw his guilty plea. The

9

determination of whether the defendant has breached this plea agreement by failing to fulfill the defendant's obligations herein, will be at the sole discretion of the Government.

   k.  The defendant is satisfied that defense counsel has been competent and effective in representing defendant.

  2.  The undersigned attorneys for the Government and for the defendant represent to the court that the foregoing Plea Agreement is the agreement of the parties that has been reached pursuant to the Plea Agreement procedure provided for in Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, as Amended. The attorney for the defendant further advises the Court that the defendant has been advised of the nature of the charge to which the foregoing described plea is to be offered, and that the defendant has been advised of the defendant's right to plead not guilty and to be tried by a jury on all issues herein; of the maximum possible penalty provided by law; that by the entering of a plea of guilty as aforesaid, the defendant waives the right to be tried by a jury or by the Court, waives the right to confront and cross-examine witnesses against the defendant and the right not to be compelled to incriminate the defendant; and that if the defendant pleads guilty, there will not be a further trial of any kind. Further, the defendant has been advised that if the defendant pleads guilty, the Court may ask questions about the offense to which the defendant has pleaded and that if the plea is rejected or later withdrawn, that the answers to such questions may not be used against the defendant in a civil or criminal proceeding, but that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement if the answers are not truthful.

  3. The defendant understands that the U.S. Probation Office will prepare a presentence investigation report for the Court. The Probation Officer will consider the defendant's conduct related to the offense to which the plea is offered, as well as the defendant's criminal history.

The offense level or criminal history category, as calculated by the Probation Officer and determined by the court, may differ from that projected by defendant's counsel or the U.S. Attorney.

This $\underline{25^{th}}$ day of $\underline{May}$, 2006.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

Clark Morris
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax: (334)223-7135
E-mail: clark. morris@usdoj.gov
ASB-1613-N77A

Andrew O. Schiff
Deputy Chief, Criminal Division

11

I have read the foregoing Plea Agreement, understand the same, and the matters and facts set forth therein accurately and correctly state the representations that have been made to me and accurately set forth the conditions of the Plea Agreement that has been reached.

IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" PARAGRAPH ABOVE ARE TRUE AND CORRECT AND THAT I AM SATISFIED THAT I HAVE RECEIVED COMPETENT ADVICE AND REPRESENTATION FROM MY DEFENSE COUNSEL.

Jennifer Dorsey
Defendant

Date 5/25/06

Jay Lewis
Attorney for the Defendant

Date 5/25/06

# Exhibit C

1

```
 1                IN THE UNITED STATES DISTRICT COURT

 2              FOR THE MIDDLE DISTRICT OF ALABAMA

 3                      NORTHERN DIVISION

 4

 5     UNITED STATES OF AMERICA

 6          vs.              CASE NO.: 2:05cr208-MEF

 7     JENNIFER DORSEY,

 8             Defendant.

 9           *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

10                  CHANGE OF PLEA HEARING

11           *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

12         BEFORE THE HONORABLE SUSAN RUSS WALKER, UNITED

13    STATES MAGISTRATE JUDGE, at Montgomery, Alabama, on

14    Thursday, May 25, 2006, commencing at 3:20 p.m.

15                        APPEARANCES

16    FOR THE GOVERNMENT:   Mr. Kent Brunson
                            Assistant United States Attorney
17                          OFFICE OF THE UNITED STATES ATTORNEY
                            131 Clayton Street
18                          Montgomery, Alabama   36104

19    FOR THE DEFENDANT:    Mr. Jay Lewis
                            LAW OFFICES OF JAY LEWIS
20                          Attorneys at Law
                            847 South McDonough Street
21                          Montgomery, Alabama   36104

22
              Proceedings reported stenographically;
23
                 transcript produced by computer
24

25
```

1         (The following proceedings were heard before the
2   Honorable Susan Russ Walker, United States Magistrate
3   Judge, at Montgomery, Alabama, on Thursday, May 25, 2006,
4   commencing at 3:20 p.m.)
5      (Call to Order of the Court)
6         THE COURT:   This is United States versus Jennifer
7   Dorsey, 2:05cr208-F.  We're here for a change of plea.
8   Previously, the Court was informed that the defendant
9   wishes to change her plea and consents to having the
10  guilty plea proceedings conducted by a United States
11  magistrate judge.  I am a United States magistrate judge.
12  The next higher ranking judge is a district judge, and you
13  have the right to have a district judge take your plea if
14  you wish.  If you'd like me to take your plea today, you
15  need to read and sign the consent form, please.
16        (Mr. Lewis and the defendant comply)
17        MR. LEWIS:   My client has signed the form
18  consenting to exercise of jurisdiction by the magistrate
19  judge in this case.
20        THE COURT:   Thank you.  Would counsel briefly
21  summarize the terms of the plea agreement?
22        MR. BRUNSON:   Your Honor, this was a plea
23  agreement that was reached between Clark Morris, for whom
24  I am standing in, and Mr. Lewis on behalf of Ms. Dorsey.
25  It says that it is an 11(c)(1)(C) plea.

3

```
 1        There are three counts to this indictment.  The
 2  agreement provides that Ms. Dorsey will plead guilty to
 3  Counts 1 and 3, and Count 2 will be dismissed.
 4        There is an agreement that the amount of
 5  amphetamine in the case is approximately 373 grams.
 6        There is a cooperation agreement, and it says in
 7  the agreement a downward departure of at least four
 8  levels.  And I do note some information in the file that
 9  there has already been some cooperation.  In talking with
10  Mr. Lewis, he confirms that there already has been some
11  cooperation.
12        There is also a provision, a three-level
13  departure on the offense -- the offense category for
14  pleading early, for acceptance of responsibility.  And
15  there is also information that if appropriate, there could
16  be a departure under Rule 35.  And I'm not sure -- and
17  maybe Mr. Lewis can shed some light on it -- if that is in
18  addition to the minimum four level, or if that includes
19  the minimum four level.
20        MR. LEWIS:  That's in addition to the four
21  level.  The four level is taken under the guidelines
22  themselves.
23        THE COURT:  All right.  And is there a waiver of
24  appeal as --
25        MR. BRUNSON:  Yes, Your Honor.
```

4

1          THE COURT:  -- and collateral attack?

2          MR. BRUNSON:  Yes, Your Honor.

3          THE COURT:  All right.  We'll swear in the

4  defendant.

5          THE CLERK:  If you'd raise your right hand.

6          (The defendant is sworn.)

7          MR. LEWIS:  Your Honor, may I, before the Court

8  starts --

9          THE COURT:  Yes.

10          MR. LEWIS:  -- may I add something else?  It is a

11  three-count indictment.  I would note, though, that the

12  third count is a civil forfeiture count.  So there are

13  only two counts for which there will be a plea.  She is

14  not contesting the forfeiture.

15          MR. BRUNSON:  I don't agree with that, Your

16  Honor.  I would like for Mr. Lewis to explain to me.

17  Count 3 appears to be a substantive count.

18          MR. LEWIS:  I'm sorry.  Your Honor, I apologize.

19  There's a forfeiture --

20          MR. BRUNSON:  In addition to the three counts,

21  there is a forfeiture allegation.

22          MR. LEWIS:  Right, and that's the one I was

23  thinking of.  And I apologize to the Court and to

24  Mr. Brunson.

25          THE COURT:  All right.  So she's pleading guilty

5

```
 1   to Counts --
 2          MR. BRUNSON:  1 and 3.
 3          THE COURT:  -- 1 and 3?
 4          MR. BRUNSON:  Yes, Your Honor.
 5          THE COURT:  All right.
 6          Ms. Dorsey, do you understand that you are now
 7   under oath, and that if you answer any of the questions
 8   asked here falsely, your answers may later be used against
 9   you in another prosecution for perjury or making a false
10   statement?
11          THE DEFENDANT:  Yes, ma'am.
12          THE COURT:  What is your full name, please?
13          THE DEFENDANT:  Jennifer Dorsey.
14          THE COURT:  How old are you?
15          THE DEFENDANT:  44.
16          THE COURT:  How far did you go in school?
17          THE DEFENDANT:  Twelfth grade.
18          THE COURT:  Have you been treated recently for
19   any mental illness or addiction to narcotic drugs of any
20   kind?
21          THE DEFENDANT:  Yes, ma'am.
22          THE COURT:  You have?
23          THE DEFENDANT:  (Nods head.)
24          THE COURT:  How recently?
25          THE DEFENDANT:  I graduated from CAPS about a
```

```
 1   month -- probably about two months ago.
 2          THE COURT:  Okay.  And you've completed the
 3   program successfully?
 4          THE DEFENDANT:  Yes, ma'am.
 5          THE COURT:  Congratulations.
 6          THE DEFENDANT:  Thank you.
 7          THE COURT:  Are you currently under the influence
 8   of any drug, medication, or alcoholic beverage of any
 9   kind?
10          THE DEFENDANT:  No, ma'am.
11          THE COURT:  Have you received a copy of the
12   indictment pending against you; that is, the written
13   charges made against you in this case?
14          THE DEFENDANT:  Yes, ma'am.
15          THE COURT:  You have?
16          THE DEFENDANT:  (Nods head.)
17          THE COURT:  Okay.  I just need you to speak up a
18   little bit.  I'm sorry.
19          THE DEFENDANT:  I'm sorry.
20          THE COURT:  Have you fully discussed those
21   charges and the case in general with Mr. Lewis as your
22   counsel?
23          THE DEFENDANT:  Yes, ma'am.
24          THE COURT:  Are you fully satisfied with the
25   counsel, representation, and advice given to you in this
```

7

1    case by your attorney, Mr. Lewis?

2         THE DEFENDANT:  Yes, ma'am.

3         THE COURT:  There is a written plea agreement in

4    this case.  Did you have the opportunity to read and

5    discuss the plea agreement with your lawyer before you

6    signed it?

7         THE DEFENDANT:  Yes, ma'am.

8         THE COURT:  Does the plea agreement represent in

9    its entirety any understanding that you have with the

10   government?

11        THE DEFENDANT:  Yes, ma'am.

12        THE COURT:  Do you understand the terms of the

13   plea agreement?

14        THE DEFENDANT:  Yes, ma'am.

15        THE COURT:  Has anyone made any other or

16   different promise or assurance of any kind to you in an

17   effort to induce you to plead guilty in this case?

18        THE DEFENDANT:  No, ma'am.

19        THE COURT:  Do you understand that if the Court

20   chooses not to follow the terms of the plea agreement, the

21   Judge will give you the opportunity to withdraw your plea

22   of guilty; and that if you choose not to withdraw your

23   plea, he may impose a more severe sentence without being

24   bound by the plea agreement?

25        THE DEFENDANT:  Yes, ma'am.

8

1      THE COURT:  Has anyone attempted in any way to

2  force you to plead guilty in this case?

3      THE DEFENDANT:  No, ma'am.

4      THE COURT:  Are you pleading guilty of your own

5  free will because you are guilty?

6      THE DEFENDANT:  Yes, ma'am, I am.

7      THE COURT:  Do you understand that the offenses

8  to which you are pleading guilty are felony offenses; that

9  if your plea is accepted, you will be adjudged guilty of

10  those offenses; and that such adjudication may deprive you

11  of valuable civil rights, such as the right to vote, the

12  right to hold public office, the right to serve on a jury,

13  and the right to possess any kind of firearm?

14      THE DEFENDANT:  Yes, ma'am.

15      THE COURT:  The maximum penalty provided by law

16  for Counts 1 and 3 is as follows:  For Count 1, no more

17  than $1 million fine, no more than 20 years' imprisonment,

18  or both the fine and the imprisonment; no less than three

19  years' supervised release, a $100 assessment fee, and you

20  may be asked to make restitution to any victim of the

21  offense.  And for Count 3, no more than $250,000 fine, no

22  more than 10 years' imprisonment, or both the fine and the

23  imprisonment, no more than three years supervised release,

24  a $100 assessment fee, and you may be asked to make

25  restitution to any victim of the offense.

9

1          Do you understand the maximum punishment for

2    those two counts?

3          THE DEFENDANT:  Yes, ma'am, I do.

4          THE COURT:  With regard to supervised release, do

5    you understand that if you violate the conditions of

6    supervised release, you can be given additional time in

7    prison?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  Do you understand that you must pay

10   an assessment fee of $100 for each count?

11         THE DEFENDANT:  Yes, ma'am.

12         THE COURT:  Do you understand that under the

13   Sentencing Reform Act of 1984, the United States

14   Sentencing Commission has issued guidelines for judges to

15   follow in determining the sentence in a criminal case?

16         THE DEFENDANT:  Yes, ma'am.

17         THE COURT:  And do you understand that under

18   recent Supreme Court decisions, those sentencing

19   guidelines are now considered to be advisory guidelines?

20         THE DEFENDANT:  Yes, ma'am.

21         THE COURT:  Have you and your attorney talked

22   about how the advisory sentencing guidelines might apply

23   to your case?

24         THE DEFENDANT:  Yes, ma'am, we have.

25         THE COURT:  Do you understand that parole has

1  been abolished and that if you are sentenced to prison,

2  you will not be released on parole?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  Do you understand that there is a

5  forfeiture allegation in this indictment, and that you may

6  be asked to forfeit assets as set out in the indictment?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  Do you understand that under some

9  circumstances, you or the government may have the right to

10  appeal any sentence that the Court imposes?

11          THE DEFENDANT:  Yes, ma'am.

12          THE COURT:  And do you understand that by

13  entering into this plea agreement and entering a plea of

14  guilty, you will have waived, or given up, your right to

15  appeal all -- sorry -- or to collaterally attack all or

16  part of this sentence?

17          THE DEFENDANT:  Yes, ma'am.

18          THE COURT:  Do you understand that you have the

19  right to plead not guilty to any offense charged against

20  you and to persist in that plea; that you would then have

21  the right to a trial by jury; that at trial, you would be

22  presumed to be innocent, and the government would have to

23  prove your guilt beyond a reasonable doubt?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  Do you understand that you would have

1  the right to the assistance of counsel for your defense,

2  the right to see and hear all the witnesses and have them

3  cross-examined in your defense, the right on your own part

4  to decline to testify unless you voluntarily elected to do

5  so in your own defense, and the right to the issuance of

6  subpoenas or compulsory process to compel the attendance

7  of witnesses to testify in your defense?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  Do you understand that should you

10 decide not to testify or put on any evidence, these facts

11 cannot be used against you?

12         THE DEFENDANT:  Yes, ma'am.

13         THE COURT:  Do you further understand that by

14 entering a plea of guilty, if that plea is accepted by the

15 district judge, there will be no trial, and you will have

16 waived, or given up, your right to a trial as well as

17 those other rights associated with a trial as I just

18 described them?

19         THE DEFENDANT:  Yes, ma'am.

20         THE COURT:  The charges to which you're pleading

21 guilty are set out in Counts 1 and 3 of the indictment.

22 Count 1 charges that on or about the 7th day of May 2004,

23 in Montgomery County, within the Middle District of

24 Alabama and elsewhere, that you knowingly, intentionally,

25 and unlawfully possessed with the intent to distribute

1    approximately 373.4 grams of amphetamine, a Schedule II

2    controlled substance, in violation of 21 U.S.C. Section

3    841(a)(1).  Do you understand that that's one of the

4    counts to which you're pleading guilty today?

5            THE DEFENDANT:  Yes, ma'am.

6            THE COURT:  Count 3 charges that on or about the

7    7th day of May 2004, in Montgomery County, within the

8    Middle District of Alabama and elsewhere, that you, then

9    being an unlawful user of a controlled substance as

10   defined in 21 U.S.C. Section 802, did knowingly possess in

11   and affecting commerce a firearm -- that is, a Taurus .357

12   caliber revolver with a serial number 0-C41685 -- in

13   violation of 18 U.S.C. Section 922(g)(3).  Do you

14   understand that that's the second count to which you're

15   pleading guilty today?

16           THE DEFENDANT:  Yes, ma'am.

17           THE COURT:  The elements of these offenses are as

18   follows:  For Count 1, that you knowingly possessed a

19   controlled substance and that you had the intent to

20   distribute or transfer possession of that controlled

21   substance; and for Count 2, that you knowingly possessed a

22   firearm or ammunition in or affecting interstate commerce,

23   as charged, and second, that you were an unlawful user or

24   addicted to a controlled substance at that time.

25           Do you understand the elements of these two

```
 1  offenses?
 2          THE DEFENDANT:  Yes, ma'am.
 3          THE COURT:  I need to find whether or not there
 4  is a factual basis for the plea.  How would you like to
 5  proceed?
 6          MR. LEWIS:  I'll do it, Your Honor.
 7          State your name, please.
 8          THE DEFENDANT:  Jennifer Dorsey.
 9          MR. LEWIS:  Ms. Dorsey, on or about May 7th,
10  2004, did you live in Montgomery County, Alabama?
11          THE DEFENDANT:  Yes, sir.
12          MR. LEWIS:  On that day and in Montgomery County,
13  did you possess a substance, approximately 373 grams of a
14  mixture containing amphetamine?
15          THE DEFENDANT:  Yes, sir.
16          MR. LEWIS:  And did at that time that you
17  possessed it you have the intent to distribute it?
18          THE DEFENDANT:  Yes, sir.
19          MR. LEWIS:  During that period of time, did you
20  use amphetamine or methamphetamine or any other controlled
21  substance?
22          THE DEFENDANT:  Yes, sir.
23          MR. LEWIS:  During the time that you used a
24  controlled substance, did you have possession of a Taurus
25  .357 pistol?
```

```
 1            THE DEFENDANT:  Yes, sir.

 2            MR. LEWIS:  And did you know when you possessed

 3   the substance containing amphetamine that, in fact, it did

 4   contain a controlled substance?

 5            THE DEFENDANT:  Yes, sir.

 6            MR. LEWIS:  I believe that establishes the

 7   elements, Your Honor.

 8            MR. BRUNSON:  The only other thing, Your Honor,

 9   is I would submit if the case were to go to trial, an ATF

10   expert would testify that that Taurus .357 caliber

11   revolver traveled in interstate commerce.

12            THE COURT:  Does the defendant agree to that?

13            MR. LEWIS:  We understand that, Your Honor.  Yes,

14   we do.

15            THE COURT:  How do you now plead to the charges

16   against you in Counts 1 and 3 of the indictment, guilty or

17   not guilty?

18            THE DEFENDANT:  Guilty.

19            THE COURT:  It is the finding of the Court in the

20   case of United States versus Jennifer Dorsey that the

21   defendant is fully competent and capable of entering an

22   informed plea, that the defendant is aware of the nature

23   of the charges and the consequences of the plea, and that

24   the plea of guilty is a knowing and voluntary plea

25   supported by an independent basis in fact containing each
```

1  of the essential elements of the offense.  The plea is

2  therefore accepted, and the defendant is now adjudged

3  guilty of those offenses.

4        A written presentence report will be prepared by

5  the probation office to assist the Court in sentencing.

6  You will be asked to give information for the report, and

7  your attorney may be present for that if you wish.  The

8  Court will permit you and your counsel to read the

9  presentence report and file any objections to it before

10  the sentencing hearing, and you and your counsel will have

11  the opportunity to speak on your behalf at the sentencing

12  hearing.

13        The date for your sentencing will be set by

14  order.  And with regard to detention or release, the

15  release status report to the Court indicates that you have

16  generally complied with your conditions of release, that

17  you've obtained and maintained employment with a storage

18  and transfer company, and that you attended and

19  successfully completed the Chemical Addictions Program.

20  The probation officer, because of the statutory mandate,

21  does, however, recommend that you be remanded to the

22  custody of the United States Marshal, as required by 18

23  U.S.C. Section 3143, unless exceptional circumstances for

24  your continued release are given in this proceeding.  And

25  I'll hear from the parties in that regard.

```
 1          MR. LEWIS:  Thank you, Your Honor.  We would
 2  suggest to the Court the exceptional conditions do --
 3  exceptional circumstances do exist.  Ms. Dorsey has been
 4  cooperating with Agent DeJohn of the ATF -- excuse me --
 5  DEA, and she has had already at least two proffer meetings
 6  with Agent DeJohn.  She is continuing to cooperate.
 7  Apparently, the DEA is searching for an additional
 8  individual who may be charged and prosecuted in this
 9  manner -- or in this case, and Ms. Dorsey would make a
10  valuable if not the only witness against him.  And we
11  would suggest to the Court that such exceptional
12  circumstances do exist as would warrant allowing
13  Ms. Dorsey to remain out until sentence.
14          THE COURT:  Is her release necessary for her
15  cooperation?
16          MR. LEWIS:  No, ma'am.  I mean, certainly she
17  could -- she's -- she is offering to cooperate under all
18  circumstances.
19          THE COURT:  Okay.
20          MR. BRUNSON:  Your Honor, I'd -- since this is
21  not my case, I have to reflect what I see in the file.  I
22  was not told to move for detention.  And I do see, and I
23  think, as I've already stated, some information that shows
24  that she was -- that she has cooperated.  And certainly if
25  we were to ask that she be detained, then I think it would
```

17

 1    thwart the efforts of the plea agreement for her to give

 2    further substantial assistance.  I do think that there are

 3    exceptional circumstances and don't object to Mr. Lewis's

 4    motion.

 5          THE COURT:  So the government does not oppose her

 6    release?

 7          MR. BRUNSON:  No, Your Honor.

 8          THE COURT:  Under those circumstances, I will

 9    find that there are exceptional reasons why your detention

10    would not be appropriate and that you are not likely to

11    flee or pose a danger to the safety of any other person or

12    the community pending imposition of sentence.  I will

13    therefore order that you be released and continued under

14    the same conditions that were imposed on August 24th,

15    2005.

16          Let me remind you with regard to sentencing that

17    failure to appear as required is a criminal offense for

18    which you could be sentenced to imprisonment independently

19    of this charge, and that all the conditions on which you

20    were released up till now do continue to apply, and that

21    the penalties for violating those conditions can also be

22    severe.  Do you understand that?

23          THE DEFENDANT:  Yes, ma'am.

24          THE COURT:  All right.  I will continue you on

25    release pursuant to the terms of this order.  Thank you.

18

```
1          MR. BRUNSON:  Thank you, Your Honor.

2          MR. LEWIS:  Thank you, Your Honor.

3          THE CLERK:  Court is recessed.

4      (Proceedings concluded at 3:37 p.m.)

5                  * * * * * * * * * *

6                  TRANSCRIBER'S CERTIFICATE

7          I certify that the foregoing is a true and

8   correct transcript, to the best of my ability, from the

9   stenographic notes provided to me by Official Court

10  Reporter Risa L. Entrekin.

11         This 10th day of December 2007.

12

13                          /s/ Patricia G. Starkie
                            Registered Diplomate Reporter
14                          Certified Realtime Reporter
                            Official Court Reporter
15

16

17

18

19

20

21

22

23

24

25
```

# Exhibit D

```
1                IN THE UNITED STATES DISTRICT COURT

2                FOR THE MIDDLE DISTRICT OF ALABAMA

3                        NORTHERN DIVISION

4

5     UNITED STATES OF AMERICA

6          vs.                  CASE NO.: 2:05cr208-MEF

7     JENNIFER DORSEY,

8          Defendant.

9                 * * * * * * * * * * * * * * *

10                        SENTENCING

11                * * * * * * * * * * * * * * *

12          BEFORE THE HONORABLE MARK E. FULLER, UNITED STATES

13   DISTRICT JUDGE at Montgomery, Alabama, on September 11, 2006,

14   commencing at 11:25 a.m.

15                        APPEARANCES

16   FOR THE GOVERNMENT:      Ms. A. Clark Morris
                              Assistant United States Attorney
17                            OFFICE OF THE UNITED STATES ATTORNEY
                              131 Clayton Street
18                            Montgomery, Alabama   36104

19   FOR THE DEFENDANT:       Mr. Jay Lewis
                              LAW OFFICES OF JAY LEWIS
20                            Attorneys at Law
                              847 South McDonough Street
21                            Montgomery, Alabama   36104

22
              Proceedings reported stenographically;
23
              transcript produced by computer
24

25
```

```
 1                        EXAMINATION INDEX

 2                         JENNIFER DORSEY

 3        DIRECT BY MR. LEWIS . . . . . . . . . . .     7
          CROSS BY MS. MORRIS . . . . . . . . . . .     9
 4        REDIRECT BY MR. LEWIS  . . . . . . . . . .   12

 5                          HERMAN WESLEY

 6        DIRECT BY MR. LEWIS . . . . . . . . . . .    27

 7                          CABOTT STOUGH

 8        DIRECT BY MR. LEWIS . . . . . . . . . . .    28

 9                          GLEN WINKLER

10        DIRECT BY MR. LEWIS . . . . . . . . . . .    30

11                  * * * * * * * * * * * * *

12           (The following proceedings were heard before the

13    Honorable Mark E. Fuller, United States District Judge, at

14    Montgomery, Alabama, on September 11, 2006, commencing at

15    11:25 a.m.)

16           THE COURT:  I'll call the case of United States of

17    America versus Jennifer Dorsey.  Good morning.

18           MR. LEWIS:  Good morning, Your Honor.

19           THE COURT:  Mr. Lewis, I have reviewed the pleadings

20    that were filed recently in this case, and I'm going to take

21    your memorandum to the Court filed on September the 2nd as an

22    objection.  Even though it was filed late, I will allow you the

23    opportunity to argue that or call witnesses if you wish to

24    present evidence in support of that request, recommendation or

25    objection or whatever the case may be.  If you wish to present
```

1   evidence, I'm going to ask that you and Ms. Dorsey remain at

2   counsel table if you think you can proceed without the necessity

3   of calling witnesses.  Then you may approach the podium.

4           MR. LEWIS:  Your Honor, I don't have any witnesses to

5   call as to the objection -- and I think the only objection posed

6   was to the two-point enhancement.  The remainder, and I do plan

7   to call three witnesses, will be speaking to the desire on our

8   part for leniency by the Court.

9           THE COURT:  All right.  Why don't you just remain at

10  counsel table, and we can take up your responses from there as

11  we proceed, Ms. Dorsey.

12          Ms. Dorsey, today the Court will determine a reasonable

13  sentence in your case by considering the United States

14  Sentencing Guidelines, which were promulgated pursuant to the

15  Sentencing Reform Act of 1984, and which are now advisory, and

16  by considering the factors set forth in 18 United States Code

17  Section 3553(a).

18          It appears that a plea agreement has been reached in

19  your case pursuant to the requirements of Rule 11(c)(1)(C),

20  which is commonly referred to as a binding plea agreement under

21  the Federal Rules of Criminal Procedure.  Is that, in fact,

22  still the case?

23          MS. MORRIS:  It is, Your Honor.

24          MR. LEWIS:  It is, Your Honor.

25          THE COURT:  I would ask counsel for either the United

```
 1   States or for the defendant to state the terms of the plea
 2   agreement before we proceed further.
 3           MS. MORRIS:  Yes, Your Honor.  As outlined in the plea
 4   agreement that was filed in this case, the government agreed to
 5   make a motion for the third point for acceptance of
 6   responsibility, assuming that the defendant did qualify for
 7   such, and she did.  The government and the defendant further
 8   agree that the amount of amphetamine attributable to the
 9   defendant in this case is approximately 373 grams of
10   amphetamine.  And if I said methamphetamine, I meant to say
11   amphetamine.  The government further agrees upon being sentenced
12   that the government will dismiss Count 2 of the indictment.  And
13   if the defendant complies with the obligations in the
14   cooperation agreement that is outlined in the plea agreement,
15   the government will then make a motion pursuant do 5K1.1 of the
16   sentencing guidelines for downward departure.  Such motion would
17   be at least four levels.  In return, the defendant just agrees
18   to plead guilty to the indictment, except for Count 2, of
19   course, and not to commit any other federal, state, or local
20   crimes.  I will also mention for the Court that there was a
21   waiver of appeal.
22           THE COURT:  Mr. Lewis, anything to add to what has been
23   represented to the Court?
24           MR. LEWIS:  No, Your Honor.  That was fairly stated.
25           THE COURT:  All right.  There are also two other
```

1  motions that are pending before the Court.  That is a motion for

2  the application of the third point for acceptance of

3  responsibility to the offense level under Section 3E1.1(b) of

4  the United States Sentencing Guidelines, and a motion for

5  downward departure for the defendant's substantial assistance

6  pursuant to Section 5K1.1 of the United States Sentencing

7  Guidelines.

8         Before we proceed on those motions, let me tell you,

9  Ms. Dorsey, that I have reviewed the presentence report of

10  investigation, the motions filed by the government as I have

11  recited, the plea agreement, the memorandum to the Court, along

12  with the -- I think there are 11 letters in support of leniency

13  by this Court.  And it is the Court's intentions, as I am

14  required to inform you, to accept your plea and to sentence you

15  in accordance with the terms of the plea agreement.

16         After having made that finding or made that known to

17  you, Ms. Dorsey, I will address the United States' motion for

18  the application of the third point for acceptance of

19  responsibility under Section 3E1.1, subsection (b), which is

20  document number 36.  Without objection, that motion is granted,

21  and the third point would be applied to you for your acceptance

22  of responsibility in calculating a recommended sentence under

23  the United States Sentencing Guidelines.

24         Ms. Dorsey, have you and your attorney had an

25  opportunity to review the presentence report before today's

1  date?

2        THE DEFENDANT:  Yes, sir, we have.

3        THE COURT:  Do you have any objections to any of the

4  content of the presentence report?

5        THE DEFENDANT:  No, sir.

6        THE COURT:  Any objections by the United States?

7        MS. MORRIS:  There are not, Your Honor.

8        THE COURT:  Mr. Lewis, how am I to take your

9  memorandum?  I don't know whether to take that as an objection

10  or to take that as part of the opportunity for the defendant to

11  make a statement prior to the sentence being imposed.  Which

12  would you rather me do?

13        MR. LEWIS:  Your Honor, there are parts of that

14  memorandum to which we have witnesses to testify in terms of

15  super acceptance of responsibility, of extraordinary measures

16  taken to effect rehabilitation, and I don't know how the Court

17  would like to proceed.  The part about the objection to the

18  enhancement, that's going to be strictly argument; and frankly,

19  Your Honor, it's all laid out in the memorandum itself.

20        THE COURT:  Well, as to the legal arguments that I

21  would construe to be an objection to the two points that were

22  applied for possession of a firearm in connection with a drug

23  trafficking offense -- let me make sure my terminology is

24  accurate -- under Section 2D1.1(b)(1) of the United States

25  Sentencing Guidelines, without objection to the factual basis

1  asserted in the presentence report investigation, I would make

2  the factual finding that the firearm that was found and

3  recovered in the same room where the drugs were recovered, even

4  with the cooperation of Ms. Dorsey, was a firearm possessed in

5  relation to a drug trafficking offense, and I would find both

6  factually and legally that the two-point enhancement would

7  apply.  If you have witnesses that you wish to call in regards

8  to this enhancement on a factual basis, I'd allow you to call

9  them at this point.  If you are calling witnesses for the

10  purpose of requesting the Court's leniency in some fashion, you

11  may reserve that right to call them at that time.

12       MR. LEWIS:  In that case, Your Honor, I would call

13  Jennifer Dorsey to testify as to the factual basis for our

14  objection.

15       THE COURT:  Okay.  You may approach, Ms. Dorsey.  If

16  you will, take the witness stand.

17       THE CLERK:  You do solemnly swear or affirm that the

18  testimony you give in this cause to be the truth, the whole

19  truth, and nothing but the truth, so help you God?

20       THE WITNESS:  I do.

21     JENNIFER DORSEY, the witness, having been duly sworn,

22  testified as follows:

23                    DIRECT EXAMINATION

24  BY MR. LEWIS:

25  Q.  State your name, please.

8

```
 1   A.   Jennifer Dorsey.
 2   Q.   Ms. Dorsey, sometime on or before May 7th, 2005, there was
 3   a -- you met somebody in a car; is that correct?
 4   A.   Yes, sir.
 5   Q.   And that's the basis for the later search of your house; is
 6   that correct?
 7   A.   Right, yes, sir.
 8   Q.   Okay.  When you met somebody in the car, when you went out,
 9   did you possess a weapon with you at that time in your physical
10   possession?
11   A.   No, sir.
12   Q.   In connection with the possession of the amount of
13   amphetamine that was located in your house, was there any
14   connection between that and the weapon that you had in your
15   nightstand?
16   A.   No, sir.
17   Q.   The fact is they were both under the same roof; is that
18   correct?
19   A.   Yes, sir.
20   Q.   Did you ever during any drug transaction, receipt,
21   transmission, anything else in your life, did you ever hold that
22   weapon in your hand?
23   A.   No, sir.
24   Q.   What was that weapon there for, Ms. Dorsey?
25   A.   For protection for my daughter and myself.
```

9

1  Q.  Your daughter is how old?

2  A.  Thirteen.

3  Q.  And she lived with you in the house?

4  A.  Yes, sir.

5  Q.  Were you the only two people in that house?

6  A.  At the time that -- when they came in, no, sir.

7  Q.  Okay.  But prior to that time?

8  A.  Yes, sir.

9  Q.  Okay.  Was it prior to that time that you acquired the

10 handgun?

11 A.  Yes, sir.

12 Q.  Did you ever have any intention of using, brandishing,

13 holding, waving or in any other way utilizing that handgun in

14 connection with a drug offense?

15 A.  No, sir.

16      MR. LEWIS:  Your Honor, that's all we have factually on

17 that matter.

18      THE COURT:  Cross?

19      MS. MORRIS:  Just briefly, Your Honor.

20                    CROSS EXAMINATION

21 BY MS. MORRIS:

22 Q.  Ms. Dorsey, the gun was found in your nightstand; is that

23 correct?

24 A.  Yes, ma'am.

25 Q.  And the methamphetamine was found, I believe -- found in the

```
 1   same bedroom?

 2   A.   Yes, ma'am.

 3          MR. LEWIS:   Objection.

 4   Q.   Is that correct?

 5          MR. LEWIS:   Object, Your Honor.   I believe she

 6   misstated -- partly misstated that.   It's amphetamine.

 7          MS. MORRIS:   I apologize.   I do keep doing that.

 8          THE COURT:   That's all right.

 9   Q.   Let me back up.   At the time, though, this was purported

10   methamphetamine; is that correct?   Did you know it was

11   methamphetamine or know it was amphetamine at the time?

12   A.   I wasn't sure what it was, to tell you the truth.

13   Q.   But you knew it was either methamphetamine or amphetamine?

14   A.   I knew it was some kind of drug.

15   Q.   And this amphetamine was found in the same bedroom with the

16   gun?

17   A.   Yes, ma'am.

18   Q.   In fact, this amphetamine was found beside the bed; is that

19   correct?

20   A.   It was up further from the nightstand, yes, ma'am.

21   Q.   Part of it was actually found in a shoe box; is that

22   correct?

23   A.   That's where it was at, yes, ma'am.

24   Q.   And there was also found in that same bedroom some

25   marijuana; is that correct?
```

```
 1   A.   Yes, ma'am.

 2   Q.   And some scales?

 3   A.   Yes, ma'am.

 4   Q.   And the scales were used for you or whomever to weigh up the

 5   amphetamine?

 6   A.   Yes, ma'am.

 7   Q.   And at the time -- I think you've been pretty honest.   At

 8   that time in your life, you were selling amphetamine or

 9   methamphetamine?

10   A.   Yes, ma'am.

11   Q.   And you were selling it partially out of your house; is that

12   correct?

13   A.   Yes, ma'am.

14   Q.   People would come to your house?

15   A.   Yes, ma'am.

16   Q.   And you were selling or you had over 300 grams of

17   amphetamine in your house on the day of the search warrant?

18   A.   Yes, ma'am.

19   Q.   And that is worth how much?

20   A.   Probably -- I really don't remember.

21   Q.   Thousands of dollars, though?

22   A.   Yes, ma'am.

23   Q.   I mean, we're not talking about a small amount.   Thousands

24   of dollars, probably over $5,000; isn't that about right?

25   A.   Probably 3,000.
```

12

1  Q.  Okay.  Let's say 3,000.  So you were dealing in large sums

2  of money at that time?

3  A.  Yes, ma'am.

4  Q.  And you had the money around?

5  A.  Yes, ma'am.

6  Q.  And you had these drugs around?

7  A.  Yes, ma'am.

8       MS. MORRIS:  That's all I have at this time, Your

9  Honor.

10      THE COURT:  Redirect?

11                    RECROSS EXAMINATION

12  BY MR. LEWIS:

13  Q.  One follow-up question, Ms. Dorsey.  Did you ever deal,

14  sell, or receive any drugs while physically back in your bedroom

15  at the same place the gun was?

16  A.  No, sir.

17      MR. LEWIS:  That's all I have, Your Honor.

18      THE COURT:  Any recross by the United States?

19      MS. MORRIS:  No, Your Honor.

20      THE COURT:  Ms. Dorsey, I have some questions for you.

21      The presentence report indicates that before your

22  arrest in May of 2004 that you had admittedly been using either

23  amphetamine or methamphetamine continuously for five years?

24      THE DEFENDANT:  Probably, yes, sir.

25      THE COURT:  And at that time, you had your 13-year-old

1   daughter that lived with you?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  I'm making the assumption that you've been

4   around people that have used and seen the effects of

5   methamphetamine use?

6          THE DEFENDANT:  I have now.

7          THE COURT:  I have also been, unfortunately, exposed

8   through this job to seeing people who have had prolonged

9   exposure and use of methamphetamine, and it's my uneducated

10  assumption that prolonged use of methamphetamine develops

11  symptoms such as paranoia.  Would you agree with that?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  And people who have prolonged use of -- who

14  engage in the prolonged use of methamphetamine seem to often be

15  armed.  Would you agree with that?

16         THE DEFENDANT:  Seem to be armed?

17         THE COURT:  Seem to always have guns around.  Whether

18  they use them or not, that just seems to be a common denominator

19  that I happen to, unfortunately, see.

20         THE DEFENDANT:  The people I was around didn't.

21         THE COURT:  The amphetamine that was located in your

22  apartment or house --

23         THE DEFENDANT:  House.

24         THE COURT:  -- in your house, it was located in your

25  bedroom?

```
 1          THE DEFENDANT:  Yes, sir.

 2          THE COURT:  The handgun was located in a dresser drawer

 3  in your bedroom?

 4          THE DEFENDANT:  Yes, sir.

 5          THE COURT:  That's all I have.  Anything further,

 6  Mr. Lewis --

 7          MR. LEWIS:  Your Honor, the only thing --

 8          THE COURT:  -- of this witness?  Any questions?

 9          MR. LEWIS:  Oh, no.  Nothing further of this witness.

10          THE COURT:  Any cross?

11          MS. MORRIS:  No, Your Honor.

12          THE COURT:  Ms. Dorsey, thank you.  You may step down.

13          Any other witnesses or evidence or arguments in support

14  of your memorandum to the Court, assuming that we treat this as

15  an objection to the two-point --

16          MR. LEWIS:  Only this, Your Honor.  First of all,

17  there's no indication in the presentence report, other than the

18  fact that the enhancement was applied, that that gun was

19  possessed in connection with a drug offense.  We would also

20  point out to the Court two things, and I won't belabor this.

21  Number one, she is -- I mean, there is also an account relating

22  to a drug user in possession of a weapon that is already taken

23  into account in these proceedings.  Number two, application

24  number three of the guideline that -- under which the government

25  and probation office are traveling, 2D1.1(b)(1), states that
```

1   that adjustment should be applied if it is -- should not be

2   applied if it is clearly improbable that the weapon was

3   connected with the offense.  I understand that places a burden

4   on the defendant to establish clear improbability, Your Honor.

5   The fact is that there's been no establishment of probability at

6   all, and we would ask the Court to remove the two-point

7   enhancement for possession of the weapon in connection with the

8   drug trafficking offense.

9        THE COURT:  So it's your argument that based upon

10  application note 2D1.1(b)(1), even though it says that the

11  burden is to prove that it would be clearly improbable that the

12  weapon was connected with the offense, that the government must

13  first show that it was possessed in connection with a drug

14  trafficking offense before that burden would be placed upon the

15  defendant?

16       MR. LEWIS:  Our position, Your Honor, is that there

17  should be some showing, because you've got something that's

18  basically a punitive application that -- and the rule of lenity

19  always, of course, favors the defendant.

20       THE COURT:  Let me hear from probation.  Is there

21  anything, Jo Ann, that you can add to what you've heard today?

22       PROBATION OFFICER:  Your Honor, it's our position that

23  when a gun is as close as that gun was to the amount of drugs

24  that she had in her possession, it should be presented to the

25  Court.  I have no other information other than her statement to

16

1    me about why the gun was there.

2            THE COURT:  Should the counts be grouped together, or

3    are we looking at this as an enhancement for the possession of a

4    firearm or a handgun in connection with a drug trafficking

5    offense?

6            PROBATION OFFICER:  These two counts, Counts --

7            THE COURT:  1 and 3.

8            PROBATION OFFICER:  -- 1 and 3 were grouped together,

9    and we used 1 because it has a higher guideline, and that is an

10   enhancement for Count 1.  If she --

11           THE COURT:  Go ahead.

12           PROBATION OFFICER:  If she had been convicted of Count

13   2, we could not have used that enhancement because the gun is

14   taken into consideration.

15           THE COURT:  Right.  Ms. Sellers, if Ms. Dorsey in this

16   case had only been charged with Count 1 --

17           PROBATION OFFICER:  Yes, sir.

18           THE COURT:  -- and the firearm had been found in her

19   possession at the same place that it was found, would her

20   recommended offense level have been any higher based upon her

21   having pled guilty only to Count 1 as opposed to this, what you

22   have called a grouping under Counts 1 and 3?

23           PROBATION OFFICER:  No, sir, because I don't believe

24   she had any extra points added.  I'm pretty sure that she

25   didn't.  No.

1        THE COURT:  Let me tell you, it's my understanding that

2   she -- even though you call them, quote, grouped, that her

3   offense level was calculated based upon the higher of the two

4   offenses, and that being offense one.

5        PROBATION OFFICER:  Right.

6        THE COURT:  And that the two points for possession of

7   the firearm in connection with the drug trafficking offense,

8   although it is an enhancement, and although you called it

9   grouping, from my view I don't really see there being a

10  distinguishing factor between those two -- It's a matter of

11  semantics, I guess, is what I'm trying to get across.

12       PROBATION OFFICER:  If she had just been convicted of

13  Count 1, it would be the same.  We would still add the two

14  points and not be any higher.  If she had been convicted of

15  Count 2, then we could not have added those two points.

16       THE COURT:  And I understand that, so we're not even

17  considering Count 2.  But with the two counts that we are

18  considering, because Mr. Lewis has raised this as an

19  objection -- And I want to say for the record, the objection was

20  filed late, and I know that probation didn't get a chance to

21  review the objection.  But because the objection was filed and

22  the argument that Mr. Lewis has made, would there be any

23  difference in the recommended offense level under the sentencing

24  guidelines because you have grouped the offenses in Counts 1 and

25  3 as opposed to using Count 3 only as an enhancement?  Should

1  they be grouped, or does it make any difference?  I don't see

2  that there practically is any difference between what you have

3  called grouping the offenses, because she's only been -- her

4  base offense level is calculated on the offense set forth in

5  offense one.

6        PROBATION OFFICER:  That's correct.  Maybe Ms. Caple

7  can explain this better than I can.  She's looking.

8        PROBATION OFFICER:  I'm understanding the argument that

9  the Court is making, but what has happened is you have two very

10  similar offenses.  And because they're similar, under the United

11  States Guidelines they are grouping them into one group.

12        Say, for instance, she had not been convicted of Count

13  1, and 922(g) only with regard to 2K2.1.  However, when we got

14  to the (b)(5) enhancement, we still would have gone back to

15  2D1.1, and she would have gotten still this same offense level

16  that we have here.  But she is actually --

17        THE COURT:  But my question is if she had only been

18  charged with the offense set out in offense one, possession with

19  intent to distribute the quantity of methamphetamine or

20  amphetamine that she has pled guilty to, assuming Counts 2 and

21  3 were never lodged against Ms. Dorsey, because the gun was

22  still found in the room, would the base offense level have still

23  been --

24        PROBATION OFFICER:  It would have been 32 based on the

25  amount of drugs.

```
1                 THE COURT:  -- 32 as calculated?

2                 PROBATION OFFICER:  Yes, sir.

3                 THE COURT:  Even though you called it grouped, it still

4      would have been 32?

5                 PROBATION OFFICER:  Yes, sir.

6                 THE COURT:  And you would have still apprised the Court

7      of the enhancement for possession of a firearm in connection

8      with a drug trafficking offense --

9                 PROBATION OFFICER:  Yes, sir.

10                THE COURT:  -- under 2D1.1(b)(1)?

11                PROBATION OFFICER:  Exactly.  Because it would be our

12     contention that it's not clearly improbable under her

13     circumstances.

14                THE COURT:  Okay.  Mr. Lewis, I'll hear any further

15     arguments that you have or witnesses that you have on this

16     position.

17                MR. LEWIS:  Your Honor, we have no further arguments or

18     witnesses on this particular matter.

19                THE COURT:  Anything by the United States?

20                MS. MORRIS:  Your Honor, I would just point out to the

21     Court that Ms. Dorsey has just admitted she was selling drugs

22     from that house.  She had large sums of money and large sums of

23     drugs in that house.  As the Court is well aware, the Eleventh

24     Circuit has ruled that guns are tools of the trade for drug

25     dealers.  And given the location of this gun in relation to the
```

 1   drugs, I think that it is quite obvious that the gun was being

 2   used to protect Ms. Dorsey, but as well as to protect the drugs

 3   and the money.  As the Court just pointed out more or less or

 4   questioned Ms. Dorsey about, Ms. Dorsey did have people coming

 5   to her house, and these people, while they may be on drugs or

 6   just purchasing drugs for later use, are, quite frankly, more

 7   dangerous than your average citizen walking on the streets just

 8   because they're involved in the drug trade.  So I think this

 9   gun -- it is not clearly improbable that this gun was used in

10   connection with the drug trafficking.

11          I would also point out for the Court that in 2D1.1,

12   under application note three it uses as an example of a clearly

13   improbable gun an unloaded hunting rifle.  This is a revolver

14   that was found next to the drugs.  I mean, a hunting rifle,

15   unloaded, I can -- I think we all agree would be or could be

16   clearly improbable.  But in this case, this is something that's

17   almost the opposite of that.

18          THE COURT:  Any argument by the defense?

19          MR. LEWIS:  Nothing further, Your Honor.

20          THE COURT:  Here is the Court's findings of fact and

21   conclusions of law on this issue:  First, I would find that

22   there is no distinguishable difference in the calculation of the

23   offense level because of the added Count 3 as opposed to your

24   original charge in Count 1 of possession with intent to

25   distribute the quantity of amphetamine or methamphetamine that

1  you have been charged with in Count 1, Ms. Dorsey.

2       Next, the Court finds that the government or the United

3  States does not have to show that you had any intent to use the

4  gun in any criminal activity.  But I do find that the possession

5  of the gun by you in your bedroom, in the room where the drugs

6  were kept that you were admittedly selling, used to sell drugs

7  over a period of time, did embolden you by promoting, in your

8  words, your peace of mind of having security available for you

9  and your daughter while you resided in that home.  Therefore, I

10  do find that the two-point enhancement for possession of a

11  firearm in connection with a drug trafficking offense should be

12  and is applied under section 2D1.1(b)(1) of the United States

13  Sentencing Guidelines.

14       With these findings of fact and conclusions of law, are

15  there any objections, any further objections that the defendant

16  has at this time?

17       MR. LEWIS:  There are no objections, Your Honor.

18       THE COURT:  Okay.  Having made the Court's findings as

19  to the memorandum to the Court, as the Court has interpreted

20  that memorandum to contain objections to the two-point

21  enhancement for possession of a firearm in connection with a

22  drug trafficking offense, the Court adopts the factual

23  statements contained in the presentence report and the testimony

24  of Ms. Dorsey, with specific findings under the guidelines that

25  the offense level is 31, the criminal history category is I, the

1  guideline range is from 108 months to 135 months, the supervised

2  release period is from two to three years, and the fine range is

3  from $15,000 to $1 million.

4          Also before the Court is the United States' motion for

5  downward departure and certification of substantial assistance

6  pursuant to Section 5K1.1 of the United States Sentencing

7  Guidelines as set forth in document 37 in this case.  I will

8  hear from the government as to the grounds on which the

9  government relies in its motion.

10          MS. MORRIS:  Your Honor, upon consulting with defense

11  counsel, may we do this at side bar?

12          THE COURT:  You may.

13          MS. MORRIS:  Thank you.

14          (Bench conference as follows:)

15

16              THIS PORTION OF THE RECORD UNDER SEAL

17

18

19

20

21

22

23

24

25





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1          THE COURT:  Back on the record.  As stated outside of
 2  the presence of those who remain in the courtroom but in the
 3  presence of counsel for the United States and the defendant and
 4  defendant's counsel and after independent inquiry of this Court
 5  and based upon the representations of the United States, the
 6  government's motion for downward departure as outlined in
 7  document 37 based upon the defendant's substantial assistance
 8  should be and is granted.  The basis for that motion as
 9  represented by Ms. Morris on behalf of the United States will
10  remain under seal until further order of this Court.  This
11  finding results in a reduction of the guideline level of 27
12  which, when combined with the criminal history category, creates
13  a guideline range of 70 months to 87 months and a fine range
14  from $12,500 to $1 million.  An offense level of 27, which when
15  combined -- as I've stated.  And that would be true for both
16  counts that you have pled guilty to in this case, Ms. Dorsey.
17          All right.  Mr. Lewis, do either you or your client
18  have anything to say in mitigation or otherwise before the Court
19  pronounces sentence in this case?
20          MR. LEWIS:  We do, Your Honor.  May I call witnesses?
21          THE COURT:  You may.  And you may be seated if you have
22  witnesses that you wish to call, Ms. Dorsey.
23          MR. LEWIS:  Your Honor, we would call Mr. Herman
24  Wesley.
25          THE COURT:  Mr. Wesley.
```

27

```
 1            (Witness was sworn.)

 2      HERMAN WESLEY, the witness, having been duly sworn,

 3  testified as follows:

 4                      DIRECT EXAMINATION

 5  BY MR. LEWIS:

 6  Q.   Would you tell us your name, please, and spell your last

 7  name for us.

 8  A.   My name is Herman Wesley.  W-E-S-L-E-Y.

 9  Q.   Mr. Wesley, how are you employed?

10  A.   I'm the minister of the NorthPointe Church of Christ.

11  Q.   And as minister of the NorthPointe Church of Christ, have

12  you come to know Jennifer Dorsey?

13  A.   Yes, I have.

14  Q.   How do you know Jennifer Dorsey?

15  A.   Jennifer became a member of our congregation about two years

16  ago.

17  Q.   And how would you describe her level of activity in your

18  congregation?

19  A.   She's one of our most active members.  Very dedicated,

20  committed, and she's been a consistent member in her actions

21  with our young people, in her actions with our community, and in

22  general church activities since she has been part of our

23  congregation.

24  Q.   How has her interaction with other people been in terms of

25  positive, negative, what?
```

28

```
 1  A.  It's been very positive.  Since Jennifer came to be a member
 2  of our congregation, she has been consistently involved in
 3  sharing good advice with our young people, just being a good
 4  supporter of the ministry, and making herself available for
 5  everything that we do.  She's just had a very positive impact on
 6  everybody that she has met along with her daughter.
 7  Q.  Is your church better off for having her?
 8  A.  Oh, yes, sir.  We're better off for having her, without a
 9  doubt.
10  Q.  I have no further questions of this witness, thank you.
11           THE COURT:  Cross?
12           MS. MORRIS:  No, Your Honor.
13           THE COURT:  Reverend Wesley, you may step down.
14           THE WITNESS:  Thank you.
15           THE COURT:  Call your next witness.
16           MR. LEWIS:  Cabott Stough.
17       CABOTT STOUGH, the witness, having been duly sworn,
18  testified as follows:
19       (Witness was sworn.)
20                       DIRECT EXAMINATION
21  BY MR. LEWIS:
22  Q.  What's your name, please, sir?
23  A.  Cabott Stough.  S-T-O-U-G-H.
24  Q.  Okay.  Mr. Stough, what do you do for a living?
25  A.  My son and I own Swanner Transfer and Storage Company.
```

1    Q.    And what is Swanner Transfer and Storage Company?

2    A.    We're the Beacon Vanline Service, moving company.

3    Q.    Do you have any involvement with military relocations at

4    all?

5    A.    We have a lot of involvement with the military relocations.

6    Q.    In connection with your employment, the business you own,

7    have you come to know Jennifer Dorsey?

8    A.    I have.

9    Q.    How do you know Jennifer?

10   A.    She works for us.  She works in our operations department

11   and our sales department.

12   Q.    And what does she do?

13   A.    Well, she goes out and make sales calls, she goes out and

14   checks on jobs that are being done during that day, and she just

15   kind of works in those areas of the business, operations end and

16   sales end of the business.

17   Q.    How important has she been during her employment to your

18   business?

19   A.    She's been very important; been an excellent employee.

20   Q.    Have you had any trouble at all with Jennifer?

21   A.    None whatsoever.

22   Q.    Did Jennifer at some point tell you that she was going to

23   have to go to prison?

24   A.    She did.

25   Q.    Tell me about that conversation.

1  A.  Well, she was concerned about the imposition that it was

2  going to place on the company with us having to find someone

3  else and train them for her job and the other employees having

4  to take up their job -- her job along with the job they've

5  already got there.

6  Q.  So her concern with going to prison was for other people

7  around?

8  A.  Exactly.

9  Q.  If it came to that, would you have her back?

10 A.  I would.

11 Q.  Thank you.

12      MR. LEWIS:  No further questions of this witness, Your

13 Honor.

14      THE COURT:  Cross?

15      MS. MORRIS:  No, Your Honor.

16      THE COURT:  Thank you, Mr. Stough.

17      THE WITNESS:  Thank you.

18      MR. LEWIS:  We would call Glenn Winkler.

19      (Witness was sworn.)

20    GLEN WINKLER, the witness, having been duly sworn,

21 testified as follows:

22                    DIRECT EXAMINATION

23 BY MR. LEWIS:

24 Q.  Tell the Judge your name, please.

25 A.  My name is Glen Winkler.

1   Q.  How do you spell your last name?

2   A.  W-I-N-K-L-E-R.

3   Q.  Mr. Winkler, do you have any special education or training?

4   A.  Yes, sir.  I am -- I have a master's degree in counseling.

5   I am a substance abuse counselor in the intensive outpatient

6   program at Chemical Addictions Program here in Montgomery.  I

7   have been a substance abuse counselor now for six years.

8   Q.  About how many people would you say you've counseled during

9   your career as a substance abuse counselor?

10  A.  Hundreds.

11  Q.  Okay.

12  A.  If not in the thousands by now.  I really would -- I'd like

13  to know that.

14  Q.  Okay.  The Chemical Addictions Program, is that what we call

15  CAPS?

16  A.  Yes.  Yes.

17  Q.  Okay.  And that's locally based in Montgomery?

18  A.  Yes, sir.

19  Q.  In connection with your employment there, have you come to

20  know Jennifer Dorsey?

21  A.  Yes.  Ms. Dorsey was my client from the latter part of 2005

22  to the early part of 2006, I believe.  I would need to look at,

23  you know, the chart for the specific dates, but, yes, she was my

24  client and she successfully completed the program.

25  Q.  Okay.  You're sure it was 2005 to 2006?

```
 1   A.  No, I'm not, actually.
 2   Q.  Okay.  All right.  For how long was she in your program?
 3   A.  I would say approximately 30 weeks.
 4   Q.  Okay.  And is that a normal length of time for a person to
 5   remain in your program?
 6   A.  Uh-huh (positive response).  I'm not -- I'm not entirely
 7   sure like the specific number of weeks.  She -- she was never
 8   absent the entire time she was there.  There's a very good
 9   chance I may have advanced her early based on her progress and
10   the quality of the support system she had developed.
11   Q.  Okay.  Well, let's talk about that just a little bit.  Did
12   Jennifer tell you that she was charged with a drug trafficking
13   offense?
14   A.  Yes.
15   Q.  All right.  Did she tell you that's why she was there?
16   A.  Well, more or less.
17   Q.  Okay.
18   A.  I mean, she -- that's what brought her to treatment
19   initially, though I will say in my career, Jennifer is very
20   easily in the top five percent of all my clients that I've ever
21   worked with.  Much of my work with her was basically reinforcing
22   changes that she had already made by becoming a member of
23   Narcotics Anonymous and working the 12-step program and really
24   opening herself up to the suggestions of Narcotics Anonymous and
25   myself as her counselor, and during that time she showed
```

1   exceptional progress.

2   Q.   You see her sitting right there today?

3   A.   Yes.

4   Q.   Is that Jennifer?

5   A.   That's Jennifer.

6   Q.   All right.

7          MR. LEWIS:   Let the record reflect he's pointing to the

8   defendant in this case.

9   Q.   What did she look like when she first came to you?

10  A.   She was working hard on her recovery when she got there.

11  She was still getting her footing in her recovery and still

12  learning how to set healthy boundaries in her personal

13  relationships, reestablishing her credibility as a mother, as a

14  citizen, as -- you know, changing her lifestyle from the way it

15  was in her addiction to the way it is now.

16  Q.   And is her lifestyle changed?

17  A.   Yes.

18  Q.   Have you had contact with her since she finished your

19  program?

20  A.   I have.   She would call me every now and then or stop by

21  just to say hello and let me know how she was doing.

22  Q.   Do all of your clients do that?

23  A.   No.

24  Q.   Okay.   Have you had any opportunity to observe her

25  interaction with other people during her therapy and recovery?

```
 1   A.   Yes.   We -- much of our program is based on group therapy,
 2   group counseling, and Jennifer -- Jennifer always had positive
 3   feedback.   She would reach out to other clients who were in
 4   crisis.   She would share openly about herself.   She always
 5   accepted responsibility for, you know, the consequences of her
 6   choices and used that knowledge to try to help others.
 7   Q.   Was she a positive or a negative influence on others?
 8   A.   Oh, extraordinarily positive.
 9   Q.   You said she was in the, say, top five percent of all the
10   clients you've had in treatment?
11   A.   Uh-huh. (positive response.)
12   Q.   If you had to make a bet, what are the odds that Jennifer
13   Dorsey as you have come to know her will be drug free five, ten
14   years from now?
15   A.   In my professional opinion, 95 percent.   I would rightly --
16   I mean, if I had to -- if I had to bet my life on the continued
17   recovery of any one of my clients, Jennifer is one I would
18   consider placing my own life on.   I trust her that much.   I
19   believe in the sincerity of her recovery and her program, and
20   working with her has been an honor.   You know, she really -- I
21   believe she is a different person today than the person she was
22   when all of this started.   I really do.
23             MR. LEWIS:   I have nothing further of this witness,
24   Your Honor.
25             THE COURT:   Cross?
```

```
 1          MS. MORRIS:  No, Your Honor.

 2          THE COURT:  Is it Mr. Winkler?

 3          THE WITNESS:  Yes, sir.

 4          THE COURT:  Thank you, Mr. Winkler.  You may step down.

 5          MR. LEWIS:  Your Honor, I have no further witnesses.  I

 6   want to commend to the Court a memorandum having to do with the

 7   various factors, and I won't go through them here because that

 8   memorandum is already on the record.  But the Court has said in

 9   every sentencing this morning and has acknowledged that the

10   sentencing guidelines are advisory only.  And in fact, after

11   Booker, they are advisory only.  The problem has been -- and I'm

12   certainly not including this Court in that -- in my experience

13   judges have been applying the guidelines with more stentorian

14   diligence than ever before; that the guidelines have now become

15   even more binding.

16          I would offer this, Your Honor.  That I have

17   represented lots of defendants in this courthouse for the last

18   15 years.  I have never seen one more deserving of a downward

19   departure, substantial downward departure, than Jennifer

20   Dorsey.

21          When she first came to my office -- and I was appointed

22   to this case late.  But when she first came to my office, she

23   was a wreck.  She looked different.  Her eyes were dead.  She

24   was an addict, and she got into the drug business to support

25   that addiction.  She was disheveled.  Her hair was stringy.  She
```

1   was an addict.

2        I have had the privilege of dealing with Jennifer --

3   and I don't say this about a lot of clients, Judge, but I have

4   had the privilege of dealing with Jennifer now for months.  I

5   have seen the change that her recovery has wrought.  I have seen

6   light come back into her eyes.  I have seen a pride in her

7   appearance.  I have seen Jennifer Dorsey become a productive

8   member of society.

9        She knows, Judge, that she's got to pay the price.  She

10  understands that.  And I think Ms. Morris will tell you that she

11  has accepted responsibility.  I would say to you that she has

12  undergone a super acceptance of responsibility and extraordinary

13  efforts at rehabilitation.  The Court knows, because the Court

14  has experience how hard it is to get over a methamphetamine

15  addiction.  And you never quite quit.  This woman has made an

16  unprecedented, in my experience, recovery.  That's one of the

17  factors this Court can consider, among many, especially after

18  Coon.  And I urge this Court to consider her relationship to her

19  church, to her counselor, her recovery, her commitment to

20  herself in encouraging this Court to depart downward from the

21  recommended sentence.

22        I appreciate the Court's indulgence.

23        THE COURT:  Ms. Morris?

24        MS. MORRIS:  I would just say for the Court that it

25  does seem as though that this defendant has at least attempted

1  to turn her life around and is making great steps into doing
2  so.  Because of that, there is a recommendation from probation
3  that she receive the low end of the guidelines, and I think that
4  that adequately takes into consideration her steps towards
5  rehabilitation.  I can't say anything less than I applaud her.
6  I will say, I think methamphetamine is one of the hardest
7  addictions to beat.  And given the fact that she has come this
8  far, that is a fantastic journey.  But at the same time, the low
9  end of the guideline range does take that into effect.

10          THE COURT:  Please stand, Ms. Dorsey.  Ms. Dorsey, the
11  sentence will now be stated, but you'll have a final chance to
12  make legal objections before the sentence is imposed.  I hope
13  that you'll listen to all of what I have to say before you
14  react, because some of what I have to say is based in part on
15  the progress that you have made in your life.  You apparently
16  have the support of a great number of people here who, with the
17  problems that you have suffered in your life, you're going to
18  need as a support network.  You have demonstrated to this Court
19  that you have the ability to continue your progress towards
20  being a good mother, a good employee, a good church member, and
21  a good, contributing member of society, as has been reflected by
22  these witnesses this morning, by the memorandum that your
23  attorney has filed, and the letters of recommendation, all of
24  which I have read.  However, based upon the advisory guideline
25  range and the applicable statutory factors, it is the judgment

1  of this Court that you, Jennifer Dorsey, be committed to the

2  custody of the Federal Bureau of Prisons to be imprisoned for a

3  term of 70 months.

4          Listen to what I have to say.  The Court recommends

5  that you be designated to a facility where intensive residential

6  substance abuse treatment is available.  And I hope your

7  attorney will discuss the benefits that that will allow you

8  while in the custody of the Bureau of Prisons.

9          Based upon your inability to pay, the Court waives the

10  imposition of a fine.  However, you shall pay to the United

11  States District Court clerk a special assessment fee of $200,

12  which is due immediately.

13          The Court finds that there is no identifiable victim

14  who incurred a financial loss as a result of this offense.

15          Upon release from imprisonment, you shall be placed on

16  supervised release for a term of three years.  This term

17  consists of three years on each of Counts 1 and 3, all such

18  terms to run concurrently.

19          Within 72 hours of release from custody, you shall

20  report to the probation office in the district to which you are

21  released.  While on supervised release, you shall comply with

22  the mandatory and standard conditions of supervised release on

23  file with this court.

24          The Court also orders the following special

25  conditions:  You shall participate in drug testing and/or

```
 1   treatment.  You shall contribute to the cost of any treatment
 2   based upon your ability to pay and the availability of
 3   third-party payments.  You shall submit to a search of your
 4   person, residence, office, or vehicle pursuant to the search
 5   policy of this Court.  You shall cooperate in the collection of
 6   DNA.
 7        The Court finds that the sentence that has been stated
 8   in this case is a reasonable sentence and is imposed to reflect
 9   the seriousness of the offense and to promote respect for the
10   law and to provide just punishment for the offense, to afford
11   adequate deterrence to criminal conduct, and to protect the
12   public from any further crimes committed by you, Ms. Dorsey, and
13   to provide you, Ms. Dorsey, with the needed educational or
14   vocational training, medical care, or other correctional
15   treatment in the most effective manner available to this Court
16   and to the Bureau of Prisons.  The Court further finds that any
17   lesser sentence would be insufficient to accomplish the purposes
18   set forth in 18 United States Code Section 3553(a)(2).
19        Also the Court finds that the sentence is reasonable
20   based upon the binding plea agreement that you entered with the
21   United States in this case and is reasonable because of the
22   effort that you have exhibited thus far in assisting yourself
23   through the unobjectionable representations by the United States
24   of your assistance, which qualified you for a substantial
25   assistance departure under Section 5K1.1.  I say this to remind
```

1   you, as I will cover later, you still have the ability to assist

2   yourself and the United States and get the benefits that may be

3   afforded you through any future motion for a reduction in your

4   sentence under a Rule 35 reduction in sentence.

5          Are there any objections to the sentence or to the

6   manner in which the Court pronounced it?  For example, do you

7   have any objections to the Court's ultimate findings of fact or

8   conclusions of law?

9          MR. LEWIS:  No objections other than those already

10  stated to the enhancement.

11         THE COURT:  Any objections by the United States?

12         MS. MORRIS:  No, Your Honor.

13         THE COURT:  Ms. Dorsey, the sentence is ordered imposed

14  as stated.  The Court will now address your rights of appeal.

15         You have a right of appeal.  In order for your appeal

16  to be timely, you may need to file your notice of appeal as soon

17  as ten days from the Court's entry of written judgment in this

18  case.  If you cannot afford the cost of an appeal, you may

19  need -- you may petition the Court for leave to appeal in forma

20  pauperis.

21         Pursuant to the plea agreement reached between yourself

22  and the United States, you have waived some or all of your

23  rights to appeal the sentence in this case.  Such waivers are

24  generally enforceable, but if you believe that your waiver is

25  not enforceable, you may present that theory to the appropriate

```
 1   appellate court.  As you have heard me repeat earlier, I'm not
 2   encouraging you to appeal or not to appeal.  I'm merely
 3   informing you of your rights regarding appeal, Ms. Dorsey.
 4           Do you have any questions regarding those rights?
 5           THE DEFENDANT:  No, sir.
 6           THE COURT:  I have before me a detention and release
 7   order pending voluntary surrender, part of which requires if I
 8   were to consider that you be allowed the opportunity to
 9   voluntary surrender that there be a finding of exceptional
10   reasons why your detention would not be appropriate at this
11   time.  I will allow the government and your attorney,
12   Ms. Dorsey, to proffer that information which I have heard at
13   side bar and have ordered placed under seal.  Are there any
14   other reasons that the Court needs to consider as exceptional
15   reasons in making a determination as to your ability to
16   voluntary surrender as opposed to order that you be detained at
17   this time?
18           MR. LEWIS:  Your Honor, from the defense, we would
19   proffer the reasons that the Court has already heard.  We would
20   also -- and we believe that those are -- those do constitute
21   exceptional circumstances.  We would further point out for the
22   record Ms. Dorsey has shown up for every proceeding, every
23   meeting, every consultation, every test, everything that anybody
24   ever wanted her to do, knowing that she was facing a long prison
25   sentence; and second of all, that she is free of any of those
```

1    elements of her personal life that might have once created a

2    danger to the community.  We feel that there's no flight risk,

3    no danger to the community, and exceptional circumstances, so we

4    would ask that she be allowed to remain free pending voluntary

5    surrender.

6         THE COURT:  For the record, Ms. Dorsey, you have pled

7    guilty to an offense for which the maximum term of imprisonment

8    of ten years or more is prescribed under the Controlled

9    Substances Act.  Because of that, the Court is required to find

10   exceptional reasons why your detention today would not be

11   appropriate.  Anything that the United States wishes to add

12   other than what has been represented at side bar?

13        MS. MORRIS:  No, Your Honor.

14        THE COURT:  Ms. Dorsey, the Court has considered your

15   progress thus far and has considered the evidence presented at

16   side bar in support of your request for voluntary surrender.  I

17   would add as part of my order for your detention that you be

18   placed in custody with the Bureau of Prisons at a facility as

19   near to Montgomery as you can be reasonably placed to accomplish

20   the other requirements imposed upon you in this hearing.

21        The Court finds that there are exceptional reasons why

22   your detention would not be appropriate on this date and that

23   you are not likely to flee or pose a danger to the safety of any

24   other person or the community pending the imposition of

25   sentence.  It is therefore ordered that you, Ms. Dorsey, be

```
 1  released and continued under the same conditions imposed by the
 2  United States Magistrate Judge on August 24th, 2005.  You shall
 3  surrender at the institution designated by the Federal Bureau of
 4  Prisons on or before two p.m. on Monday, November 27th, 2006.
 5  This will give you an opportunity to complete those things that
 6  were represented to me at side bar, and I would encourage the
 7  United States to have those requirements completed to give
 8  Ms. Dorsey an opportunity at a reasonable expectation of any
 9  future benefit that she might otherwise be entitled.
10         Ms. Dorsey, I applaud you for the progress that you've
11  made.  I would say as a means of encouragement that you have
12  made remarkable progress, and I hope that the consequences that
13  you have to pay for your past acts do not reflect adversely upon
14  the progress that you have made and presented yourself before
15  this Court today.  I wish you the best of luck.  You've got a
16  lot of life left to live, and I hope that you can be productive
17  in whatever choices that you make after this time in your life
18  is behind you.
19         Anything else by the United States?
20         MS. MORRIS:  At this time the government would move to
21  dismiss Count 2 from the indictment.
22         THE COURT:  Without objection, Count 2 is dismissed and
23  the motion is granted.  Anything else?
24         MS. MORRIS:  Nothing from the government, Your Honor.
25         THE COURT:  Anything by the defense?
```

44

```
 1          MR. LEWIS:  Nothing, Your Honor.

 2          THE COURT:  There is a forfeiture obligation in the

 3   indictment.

 4          MS. MORRIS:  Then we are moving to forfeit the gun.

 5          MR. LEWIS:  And we have no objection to that, Your

 6   Honor.

 7          THE COURT:  I'd ask the United States prepare the

 8   appropriate documentation without objection from the defendant

 9   to consummate the forfeiture of the handgun that was recovered

10   as part of the search of Ms. Dorsey's residence.  And if could

11   you do so within seven days.

12          MS. MORRIS:  No problem.  We'll get the preliminary

13   order of forfeiture over to the Court immediately.

14          THE COURT:  I'll incorporate that in my final order in

15   this case.

16          THE CLERK:  The preliminary order has already been

17   filed.

18          THE COURT:  Okay.  This will be made a final order of

19   forfeiture.

20          MS. MORRIS:  We'll get the final order, then.  Thank

21   you.

22          THE COURT:  That will be incorporated in this order.

23   If you'll see probation, Ms. Dorsey, before you leave today.  I

24   wish you the best of luck.  Unless there's something else, Court

25   will be in recess.
```

45

```
 1        (Proceedings concluded at 12:30 p.m.)

 2                    * * * * * * * * * *

 3                    TRANSCRIBER'S CERTIFICATE

 4        I certify that the foregoing is a true and correct

 5   transcript, to the best of my ability, from the stenographic

 6   notes provided to me by Official Court Reporter Risa L.

 7   Entrekin.

 8        This 10th day of December 2007.

 9                              /s/ Patricia G. Starkie
                                Registered Diplomate Reporter
10                              Certified Realtime Reporter
                                Official Court Reporter
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

UNITED STATES OF AMERICA    )

2007 OCT 22 P 2: 44

    vs.    )    Civil Case No. 2:07-cv-831-MEF-SRW

JENNIFER DORSEY    )

## AFFIDAVIT OF COUNSEL

COMES NOW Jay Lewis, appointed attorney for defendant Jennifer Dorsey ("Dorsey") and would show the Court as follows:

Dorsey was originally represented in criminal case number 2:05-cr-208-MEF-SRW by Christine Freeman, the Federal Defender. Due to the discovery of a conflict, Ms. Freeman withdrew from representation, and the Court appointed the undersigned counsel.

Counsel's records show that he first met with Dorsey on 9/07/05 and represented her during the proceedings against her through her sentencing on 9/11/06.

During the year that charges were pending against Dorsey, counsel met with her or conversed with her by telephone a minimum of eighteen times. This represents the number of logged contacts; there were others that were not sufficiently significant for counsel to enter into his timekeeping program.

Counsel kept Dorsey fully apprised at all times of the progress of her case and negotiations between him and the Assistant US Attorney, Clark Morris.

In the end, Morris and the undersigned reached a plea agreement which was filed with the Court on or about 5/25/06. Pursuant to that agreement, Dorsey pleaded guilty to Counts 1 and 3 of the indictment, admitting that she possessed with intent to distribute approximately 373 grams of amphetamine, and that she possessed a firearm while being an unlawful user of or addicted to

a controlled substance. On both 5/23/06 and 5/25/06, counsel conferred with Dorsey about the plea agreement and the provisions thereof. Dorsey indicated that she understood the terms of the agreement.

The plea agreement contained a section headed, "Defendant Waives Appeal and Collateral Attack." Dorsey verbally acknowledged her understanding that she could appeal if her counsel had been ineffective or if the prosecution had engaged in misconduct; otherwise, she could not appeal or challenge her sentence in a post-conviction proceeding. On 5/25/06, Dorsey signed the plea agreement, acknowledging in writing her understanding of the waiver of appeal and collateral attack, and acknowledging her satisfaction with the advice and representation of the undersigned.

Counsel has no independent recollection of whether or not he informed Dorsey that she had ten days within which to appeal, but such advice would be superfluous since Dorsey had waived her right to appeal. Nor did Dorsey ever indicate that she wanted to appeal.

Counsel is satisfied that he negotiated the best possible outcome for Dorsey; she received full credit for acceptance of responsibility and four levels down for substantial assistance to the government. Counsel submits that he provided competent and effective representation to Dorsey.

RESPECTFULLY SUBMITTED, this __22nd__ day of October, 2007.


Jay Lewis
Attorney for Plaintiff
LAW OFFICES OF JAY LEWIS, LLC
P.O. Box 5059
Montgomery, Alabama, 36104
334-263-7733 (voice)

334-263-7733 (fax)
J-Lewis@JayLewisLaw.com
ASB-2014-E66J

SWORN TO and SUBSCRIBED before me this 22nd day of October, 2007.


_Dana Lynn Simon_
NOTARY PUBLIC, Alabama at Large

My commission expires 9/19/11


## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2006, I served the foregoing on the following by first class mail, properly addressed and postage prepaid, or I electronically filed with the Clerk of the Court the foregoing document through the CM/ECF system, which will send notification of such filing to the following individuals:

A. Clark Morris, Esq.
John T. Harmon, Esq.

Jennifer Dorsey
#11759-002
Marianna FPC
P.O. Box 7006
Marianna, FL 32447-7006


_Jay Lewis_
Attorney for Plaintiff
LAW OFFICES OF JAY LEWIS, LLC
P.O. Box 5059
Montgomery, Alabama, 36104
334-263-7733 (voice)
334-263-7733 (fax)
J-Lewis@JayLewisLaw.com
ASB-2014-E66J